PATRICK ALAN SIMMONS *v.* STATE
OF MARYLAND

[No. 160, September Term, 1969.]

*Decided December 16, 1969.*

356

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joel H. Pachino* (*Myles F. Friedman* on the brief) for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

### THE DEFENSE OF ENTRAPMENT

We find it clear that the opinions of the Court of Appeals have established that the defense of entrapment is available to criminal defendants in this jurisdiction. In *Baxter v. State,* 223 Md. 495, 499, the Court said:

> "The law in this State with respect to the defense of entrapment was restated in *Ferraro v. State,* 200 Md. 274, 89 A. 2d 628 (1952), at p. 279 (by quoting from *Callahan v. State,* 163 Md. 298, 301, 162 Atl. 856 [1932]) in this manner:
>
> > 'It is not objectionable for an officer of the law to lay a trap or unite with others to de-

tect an offender. The only effect would be to justify a more careful scrutiny of the evidence. Where the crime is not against the person nor the property of the instigator,[1] it is not clear how, in the absence of special circumstances, the commission of crime at the solicitation or procurement of another, although an officer of the law, makes the culprit any less guilty than if the criminal design had originated with the wrongdoer himself.' "

The rationale of making the defense available to an accused is "not in the view that the accused though guilty may go free, but the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct." *Sorrells v. United States,* 287 U. S. 435, 452. Or as the Court said in *Sherman v. United States,* 356 U. S. 369, at 372:

"The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include

---

1. The phrase "Where the crime is not against the person nor the property of the instigator" refers to the second of the two categories into which cases involving issues allied with the doctrine of entrapment usually fall. It encompasses cases where no crime in fact has been committed. Larceny and rape are examples. In those crimes want of consent is an element of the offense and the victim's consent is implied in the inducement by him. There may also be physical conditions which are essential to the offense and which do not exist in the case of a trap, *e.g.* in a prosecution for burglary where it appears that by reason of the trap there was no breaking. *Sorrells v. United States,* 287 U. S. 435, 442. This second category of cases was recognized in *Hummelshime v. State,* 125 Md. 563. See *Ferraro v. State,* 200 Md. 274, where the Court said, at 279: "In *Hummelshime v. State, supra,* this Court recognized the defense of entrapment only in cases where consent eliminates some essential element of the crime, *e.g.* larceny."

The first category involves cases where a crime has in fact been committed under the inducement of law enforcement officers and encompasses those instances where the accused did not intend to commit a crime before law enforcement officers induced him to do so. Our discussion in this opinion is confined to the first category.

the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." [Sorrells v. United States], 287 U. S. at page 442, 53 S. Ct. at page 212. Then stealth and strategy become as objectionable police methods as the coerced confession and the unlawful search."

Application of the law as stated in *Ferraro* is not without difficulties. It requires consideration of the phrase "in the absence of special circumstances." We believe the "special circumstances" refers to the circumstances surrounding the "solicitation or procurement" of the accused, that is the inducement to commit the crime. It has been held that where there was "no repeated and persistent solicitation of a previously law abiding citizen in order to overcome his reluctance to commit a crime" there was no entrapment as this "was only the permissible offering of an opportunity to a known offender to exercise his predisposition to violate the law." *Stewart v. State,* 232 Md. 318; *Snead v. State,* 234 Md. 63. Where the illegal transaction originated with the accused and not the enforcement authorities there was no entrapment. *Pointer v. State,* 239 Md. 641; *Cross v. State,* 235 Md. 377. In *Lane v. State,* 226 Md. 81, that the police laid not one but three separate traps for the accused was not deemed to be entrapment, the Court stating "that the conduct of the officers * * * had an appropriate objective of uncovering criminal design, and was permitted police activity, often employed and frequently essential to the effective enforcement of the law." At 88. This Court in disposing of the contention of entrapment has simply

applied the rule as stated in *Ferraro,* by finding no special circumstances existent.[2]

These opinions, while lending some guidance, do not provide the full answer to questions presented when the defense of entrapment is raised. Determined in effect on findings from the particular circumstances of each case that "special circumstances" were absent, they do not enunciate a test for the application of the *Ferraro* rule and we think it fair to say that the trial courts, prosecutors and defendants are not without some confusion with respect to the matter. It appears that the Court of Appeals has expressly not adopted either of the two divergent views regarding entrapment. In *Ferraro* it discussed at length the divergent views in the majority and concurring opinions in *Sorrells* but concluded: "We do not find it necessary to decide which, if any, of the divergent views of the defense of entrapment is law in Maryland." 200 Md. at 281. And see *Baxter v. State, supra,* at 499-500, quoting *Ferraro.* We feel it advisable now to adopt a test for the application of the rule regarding the defense of entrapment. We believe that the view of the majority in *Sorrells,* restated in the majority opinions of *Sherman v. United States, supra,* and *Masciale v. United States,* 356 U. S. 386 is the better one, and adopt it. We note that in *Sherman,* the Court said, 356 U. S. at 372: "The intervening years have in no way detracted from the principles underlying [the *Sorrells*] decision." We think, at the least, the opinions of the Court of Appeals do not preclude its adoption.

We construe the opinion of the Court in *Sorrells* as enunciating what has been termed the "origin of interest" test.[3] This test was stated in substance by Judge

---

2. See *Holt v. State,* 3 Md. App. 544; *Gamble v. State,* 2 Md. App. 271; *Jarrett v. State,* 1 Md. App. 448; *Dolan v. State,* 1 Md. App. 292.

3. See *Harvard Law Review,* vol. 73, 1333, 1335-1343. Under the "objective test", the view applied in the concurring opinions of *Sorrells* and *Sherman* and the dissenting opinion in *Masciale,* "the court considers only the nature of the police activity, without reference to the predisposition of the particular defendant. * * * [P]olice conduct which 'falls below standards to which common

Learned Hand in *United States v. Sherman,* 200 F. 2d 880 (2d Cir. 1952). Probing the aspect of inducement he concluded that in *Sorrells* "all the Court agreed as to the meaning of inducement: it was that someone employed for the purpose of the prosecution had induced the accused to commit the offense charged which he would not have otherwise committed." At 882.[4] Inducement was further explained in *Sherman v. United States,* 356 U. S. 369, at 372:

> "* * * [T]he fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. (Emphasis supplied.) See 287 U. S. at pages 441, 451, 53 S. Ct. at pages 212, 216. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

But the inducement should not *per se* be an absolute bar to criminal liability, unanswerable by the State. If it were, law enforcement would founder in cases, for example, involving secret transactions where informers are used.[5] Resolving this problem in the light of *Sorrells,* Judge Hand said:

---

feelings respond for the proper use of governmental power' would bar conviction." See *Baxter v. State, supra,* note 1, pp. 499-500. Thus a motion for dismissal of the indictment on that ground would be proper. Prior to *Sherman v. United States,* 356 U. S. 369, there were two appeals of the case to the United States Court of Appeals for the Second Circuit: *United States v. Sherman,* 200 F. 2d 880 (1952) and *United States v. Sherman,* 240 F. 2d 949 (1957).

4. It has been held that the doctrine of entrapment does not extend to acts of inducement on the part of a private citizen who is unconnected with the State. *Henderson v. United States,* 237 F. 2d 169, 175 (5th Cir. 1956), containing a collection of federal decisions.

5. See *Clark and Marshall,* Law of Crimes, (6th Ed.), § 5.13, p. 308.

"* * * [I]t is a valid reply to the defense, if the prosecution can satisfy the jury that the accused was ready and willing to commit the offense charged, whenever the opportunity offered. In that event the inducement which brought about the actual offense was no more than one instance of the kind of conduct in which the accused was prepared to engage; and the prosecution has not seduced an innocent person, but has only provided the means for the accused to realize his pre-existing purpose. * * *

Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense. On the first question the accused has the burden; on the second the prosecution has it."

The principles by which these questions of fact are to be determined by the courts were outlined in *Sorrells*. See 287 U. S. at 451. As stated in *Sherman*, 356 U. S. at 373, they are:

"On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an 'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence."

Once the accused has met his burden by establishing that the police induced him to commit the offense charged, it does not necessarily follow that the State, to meet its burden of showing that the accused had a predisposition to commit the offense, *must* show that the police prior to the inducement, had a "reasonable suspicion" that the accused was engaged in the commission of a crime or was

about to be. It is clear that if the original suggestions or initiative had come from the accused this would not be necessary. See *Cornelius, The Law of Search and Seizure* (2d Ed.) § 75, p. 256. But contrary to *Cornelius*, who was not discussing the point in the frame of reference of the test we have here adopted, even if the initiative had not come from the accused, we think that on the totality of the circumstances it may be shown that the accused was "ready and willing without persuasion" and was "awaiting any propitious opportunity to commit the offense." As to this, reasonable suspicion that the accused was engaged or about to engage in the commission of an offense would be relevant and material but not essential.[6] We find support for our view in *Smith v. State*, 242 Md. 712, where the defendant, convicted of possession and control of narcotics, relied on entrapment among other defenses. The Court set out the facts as follows:

> "A Baltimore City police officer met an informer and, while they stood on a pavement in West Baltimore, a third person joined them and the possibility of buying narcotics was discussed. The third person disappeared into a nearby building and then the appellant emerged, joined the informer and the police officer and discussed a possible sale. After receiving ten dollars from the informer, the appellant left and returned a short while later and gave one cellophane bag to the officer in exchange for ten dollars and another bag to the informer. The contents of the bag were found to be heroin hydrochloride, an opium derivative."

---

6. In fact if such reasonable suspicion were established it may well be the full answer to entrapment. *Callahan v. State, supra.* In *Callahan*, where the defendant was convicted of the unlawful sale of intoxicating liquor, the Court said, at 301, that there was no entrapment * * * "since there existed reasonable suspicion that the party was engaged in the unlawful sale of intoxicating liquor at the time it was ordered" by the police. We do not construe this as holding that there must be reasonable suspicion before inducement to preclude entrapment.

The Court flatly held that "the record showed no more than that the police officer joined with a civilian to detect a violation of the law. The fact that the police officer neither knew nor was looking for the [defendant] when the meeting occurred, rebuts the possibility of 'repeated and persistent solicitation of a previously law abiding citizen in order to overcome his reluctance to commit crime'." It did not appear from the opinion that the police had a reasonable suspicion prior to any inducement that the defendant was engaged in or about to engage in the commission of a crime; or whether or not the original suggestions or initiative came from the defendant — "the possibility of buying narcotics was discussed" — or whether in fact the defendant was previously a law abiding citizen; or whether the informer previously knew the defendant or had knowledge of any prior illicit activities (the informer was called by the appellant at trial and refused to testify). Whether the holding be construed as being predicated upon a finding of no inducement or, if there was an inducement, upon the absence of special circumstances, we think it not contrary to our views.

## PROCEDURE AS TO THE DEFENSE OF ENTRAPMENT

Under the test we have adopted resort to entrapment does not render an indictment thereafter found a nullity nor does it call for the exclusion of evidence so procured. Thus a motion to dismiss the indictment or suppress the evidence does not lie.

The defense of entrapment having been raised, the issue of whether a defendant has been entrapped is for the trier of fact as part of its function of determining the guilt or innocence of the accused.[7] Thus it is a matter of

---

7. In a separate opinion in *Sorrells*, Mr. Justice Roberts asserted that although the defendant could claim that the government had induced him to commit the crime, the government could not reply by showing that the defendant's criminal conduct was due to his own readiness and not to the persuasion of government agents. (The objective test). It was also his position that the is-

the sufficiency of the evidence. The burden as to the first question—did the police, directly or through their agent, induce the defendant to commit the offense charged in the indictment—is on the defendant. This may be established by a preponderance of the evidence. The burden as to the second question—was the defendant's criminal conduct due to his own readiness and not to the persuasion of the police, that is, did he have a predisposition to commit the offense [8]—is on the State. This must be established beyond a reasonable doubt. The question of the sufficiency of the evidence would be raised by motion for judgment of acquittal. In a jury trial if the motion is denied, the issue of entrapment would be submitted to the jury with appropriate instructions.[9]

## THE INSTANT CASE

Patrick Alan Simmons (appellant) was found guilty

sue of entrapment, so limited, should be decided by the judge, not the jury. The Court in *Sorrells* rejected this and, as was stated in *Sherman v. United States*, 356 U. S. at 377, the United States Courts of Appeals have since *Sorrells* "unanimously concluded that unless it can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury * * *." In *Sherman v. United States*, at 373, the Court concluded as a matter of law that entrapment was established. It did so on the undisputed testimony of the prosecution's witness and remarked that therefore they were not choosing between conflicting witnesses, nor judging credibility.

In our jurisdiction, where the jury are the judge of the law as well as the facts, we think that both questions pertaining to the issue of entrapment must be for the jury. We distinguish the preliminary determination by the judge as to the voluntariness of a confession. There the burden is on the State to prove voluntariness *prima facie* and if it does not the confession does not go to the jury. This benefits the accused. See *Barnhart v. State*, 5 Md. App. 222. We also distinguish the preliminary finding by the judge as to insanity. As to that issue there is a presumption that an accused is sane which he must first overcome. There is no presumption that an accused had a criminal intent in committing a crime. See *Strawderman v. State*, 4 Md. App. 689. We also distinguish the function of the court as to the reasonableness of a search and seizure. We found its function there to be under the authority of a Rule. See *Cleveland v. State*, 8 Md. App. 204.

8. In other words, was the defendant ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense.

9. The issue would come before us on appeal under the rules whereby we review any other question on the sufficiency of the evidence. See *Williams v. State*, 5 Md. App. 450.

at a court trial in the Circuit Court for Baltimore County of selling marihuana. Evidence adduced by the State showed that George Lein was a Cadet in the Baltimore County Police Department, Investigative Division, and had been so employed about 3 years. On 4 October 1968 he was conducting a narcotics investigation in the Dundalk District. "We made several other buys in the Dundalk Area and got to know the guys right well, and we learned that Mr. Simmons was selling narcotics in Dundalk." He obtained this knowledge through two addicts, John Suprick and Lansing Sheets. About a week before the trial of the instant case Sheets had been convicted of selling narcotics. Suprick had been charged with the sale of narcotics but had not then been tried. About two days after receiving the information that appellant was a seller of narcotics, Lein was in a pool hall on Dundalk Avenue. He saw appellant, whom he had previously observed "around there" but had not met, talking to some other men. Appellant had previously been pointed out to him by an informant. He approached appellant and he and appellant walked away from the other men and went into the rest room. He asked appellant "if he had any narcotics on him. * * * [Appellant] stated that he had some hash on him, and he wouldn't sell it to me in the poolroom but we could go outside in the alley. From there we went outside in the alley beside the pool hall. * * * [Appellant] pulled a small tin wrapped piece of greenish vegetable matter, suspected hashish, from his pocket and handed it to [me], at which I gave him $5." The greenish vegetable matter, on laboratory analysis, proved to be marihuana. On cross-examination Lein said that he "had no personal knowledge as to whether [appellant] was a user" of narcotics nor did he have personal knowledge of any prior convictions. No evidence was proffered by appellant.

In rendering the verdict of guilty the court found that "there was reasonable suspicion to believe a crime was being committed, and, therefore, what Cadet Lein did, did not constitute entrapment."

On appeal appellant argues that the State made no showing that the information received by the Cadet was credible or reliable, nor was it sufficient to form a reasonable suspicion. He contends that therefore he was entrapped.

First we cannot say that the lower court was clearly erroneous in finding that the police agent had reasonable suspicion to believe that appellant was engaged in a crime. "Reasonable suspicion" is less than probable cause to make a warrantless arrest. Probable cause to arrest is more than mere suspicion but less than would justify conviction. *Simms v. State,* 4 Md. App. 160. "Reasonable suspicion" is more than "mere suspicion" but less than "probable cause." The rationale of the rules relating to the reliability of informers with regard to probable cause is not apposite with respect to "reasonable suspicion." The question asked of appellant was not a custodial interrogation within the ambit of *Miranda v. Arizona,* 384 U. S. 436. When appellant said "he had some hash" on him, and indicated he would sell it, the police agent not only had reasonable suspicion that appellant was in possession of a narcotic but probable cause to believe that he had and that he would sell it. The conviction would be proper on the ground that as there existed reasonable suspicion on the part of the police agent that appellant was engaged in the unlawful possession of narcotics and was about to engage in the unlawful sale of narcotics, there was no entrapment.

Second, we think that appellant did not meet his burden of showing that there was an inducement. From the evidence, there was clearly no "repeated and persistent solicitation of a previously law abiding citizen in order to overcome his reluctance to commit a crime." *Stewart v. State, supra.* The instant case is in a factual posture comparable to *Smith v. State, supra.* As there was no inducement there was no entrapment and the conviction would be proper on this ground.

Third, even assuming that there was an inducement, we think that the evidence was sufficient for the trier of

fact to find beyond a reasonable doubt that the accused had a predisposition to commit the offense—that he was ready and willing without persuasion and awaiting any propitious opportunity to sell marihuana. We believe it clear that the trier of fact could have properly found that the criminal conduct of appellant was not "the product of the *creative* activity" of the police agent but that the police agent merely afforded opportunity for the commission of the offense. We have no difficulty in determining on which side of the line drawn between the trap for the unwary innocent and the trap for the unwary criminal appellant falls; he is on the side of the trap for the unwary criminal. Thus entrapment was not established and the conviction would be proper for this reason.

We hold that the conviction of appellant of unlawfully selling a narcotic drug was proper.

We note that the judge remarked that "if Cadet Lein walked up cold to a stranger without knowing anything about his background and said, do you have any narcotics on you; that certainly would be entrapment." As appellant states in his brief, the State conceded that at the trial—"Yes, sir; for this purpose I would concede that." We do not agree, as is apparent from our discussion herein, that in those circumstances the mere asking of that question would be entrapment. We point out that the stranger would be under no obligation to answer the question. But we believe that the mere failure to answer, in such circumstances, without more, would not give rise to "reasonable suspicion."

An addendum to the indictment charged appellant with being a second offender. Md. Rule 713 a and b. Appellant elected that the determination of that issue be not until he was convicted of the current offense, Rule 713 d, and he was subsequently separately tried thereon, Rule 713 f. Upon trial of that issue he was found guilty (appellant does not contest that conviction which, of course, would fall if the judgment of the current offense was reversed). The judge imposed a sentence of 5 years on the current offense and 5 years as a second offender

to run concurrently.[10] It is clear that Md. Code, Art. 27, § 300 authorizes only one sentence. The punishment is not for being a subsequent offender. It is for the new crime only, but is heavier if the defendant has theretofore been convicted as designated. *Murray v. State,* 236 Md. 375; *Beard v. State,* 216 Md. 302; *Garrigan v. Superintendent,* 218 Md. 662. However, as the sentences were imposed to run concurrently, appellant was not harmed.

*Judgments affirmed.*

---

10. The transcript of the proceedings so shows. The docket entries reflect only "Judgment and sentence that the traverser be committed to the jurisdiction of the Department of Correction for the term of five (5) years."