NICHOLAS LaFORTEZ *v.* STATE OF MARYLAND

[No. 475, September Term, 1970.]

*Decided April 5, 1971.*

The cause was argued before ANDERSON, ORTH, and THOMPSON, JJ.

*Leonard P. Borotka* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Peter D. Ward, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Nicholas LaFortez [1] was one of eight persons charged under indictment 4684 with conspiring together, with

---

1. He was indicted under the name of Nicholas LaFortezzi. Subsequently the surname was amended to read LaFortez.

each other and with certain other persons whose names were unknown to the Grand Jurors to violate the narcotic laws on 10 July 1968 and thence continually up to and including 5 August 1968. He was charged alone under indictment 4687 with selling methadone to Steven Cardullo,[2] 1st count; with possession of that narcotic drug, 2nd count; and with control of it, 3rd count, all on 16 July 1968. At a bench trial in the Criminal Court of Baltimore on 19 February 1970 he was convicted of the conspiracy and of the sale of methadone.

LaFortez moved for discovery and inspection on 2 October 1968 and the State answered on 15 October 1968. On 20 November 1968 he demanded particulars. He asked: (1) in what manner did he conspire as alleged in the indictment; (2) with whom did he conspire, stating date and place; (3) who was present at the time of the conspiracy other than the co-conspirators named. The State replied on 19 February 1970. As to (1) and (2) it said: "LaFortezzi was introduced to a third person by defendant Sabo for the purpose of selling narcotics to such third person. LaFortezzi and Sabo then conspired to purchase methadone and did so purchase methadone. The date was on or about July 10, 1968". In answer to (3) it listed Officers Cardullo, Weaver and Thomas of the Baltimore City Police Department.

Officer Stephen Cardoula was called as a witness in behalf of the State. In July 1968 he was working in the Northern District Plainclothes Squad on narcotic cases. On 16 July 1968 he met a Richard Passano "who was supposed to sell us [Cardoula and an informant] some heroin", at Passano's home. Passano, Cardoula and the informant drove to 2518 N. Calvert Street and Passano went in. He came out in five minutes and they drove to the 2500 block of Harford Road. Passano got out of the car, met a friend, LaFortez, and brought him back to the car. Passano and LaFortez got in the back seat and

---

2. "Steven Cardullo" was spelled "Stephen Cardoula" in the transcript of the trial.

talked about smack, the slang term for heroin. Cardoula testified: "As I said previously to this, we were talking about buying some heroin, and Rip [Passano] said he was going to pick up Nick [LaFortez], he was a connection for it. And, they were talking about how much in quantity we would purchase, and gave me directions at the same time where we would go. We drove down the street to approximately 4200 block of Harford Road. They asked me to pull over, which I did, and there at a gas station, Nick got out of the car and asked me for my belt, which I gave him. * * * He went into the men's room and came back out approximately five minutes later. He got back in the car and sat back and was perspiring and licking his lips, and saying it was great stuff. He had just shot-up". The officer explained that shot-up meant "he used the needle in his arm and shot heroin into it"; stuff referred to narcotic drugs; it was analyzed later to be methadone. They then went to the 2100 block of Barclay Street. "There, Mr. LaFortez, who had previously stated he was going to help us out with our connections and get us some heroin or smack—he got out of the car to get a friend of his who would help us in getting the stuff. He got out of the car with Richard Passano. The informant and myself stayed in the car. I observed the defendant Mr. LaFortez walk down the street to the rear of a residence. There he disappeared for about ten minutes and came back with a Negro gentleman, later known as William Robinson. They came back to the car. They came back to the car, both, or all three. Richard Passano, Mr. LaFortez, and William Robinson, all three sat in the back seat, and we drove Mr. LaFortez, I believe to Greenmount Avenue". When LaFortez came back to the car he said that "Jack [William Robinson, also known as Goldtooth Jack] would get the stuff for us. * * * We let Mr. LaFortez off on Greenmount—I believe it was Mount Royal Avenue. Excuse me, I can't remember the proper addresses around here. * * * After that we went under the directions of William Robinson to Granada Avenue, * * * Pinehurst

and Granada Avenue. Mr. Robinson got out of the car and disappeared from my sight for between ten and 15 minutes. He came back, and he came back with the supposed heroin. * * * He brought back some capsules which later proved to be methadone". Fifty capsules were in a small plastic container. The capsules contained a white powder which was analyzed by a United States Chemist and found to be methadone, "a synthetic prohibited drug".

On cross-examination it was elicited that Cardoula gave Robinson $109 for the fifty capsules. The money had been furnished by the Federal Bureau of Narcotics and Drugs. At the time the drugs were received from Robinson and the money paid to him, LaFortez was not present. On re-direct Cardoula said that when LaFortez returned the belt at the filling station "there was a small blood stain on it and it looked like it had been used". On inquiry by the court Cardoula said that he did not see LaFortez possess any narcotic drug on that day and did not see what he did in the men's room at the filling station.

At the point in the direct examination of Cardoula when the State asked him to identify the capsules defense counsel said: "I may raise an objection to any demonstrative evidence the officer may have. It hasn't been put in the hands of Mr. LaFortez". The court said that it could not rule in preliminary fashion and to "wait until it is in evidence", by which we assume it meant until it was offered in evidence. The capsules were identified as those received from Robinson and it was stipulated that a United States Chemist had analyzed them and found that they contained methadone. Although appellant expressly did not object to the introduction of the chemist's report or to the chain of custody of the capsules, he did not agree that they were admissible against him. When the capsules were offered the court said: "So the problem before me is whether or not this is admissible evidence in this case. And, I find it is. The value of it, and the weight given it remains to be seen". But when the chemist's report was offered the court said: "That's admitted sub-

ject to exception. On the theory the first State's Exhibit 1 [the capsules] is not admissible, and this will not be admissible either". We interpret the record to mean that at that point the capsules and report were admitted subject to exception.

At the close of the evidence offered by the State, defense counsel said he "still would like to object to the introduction of the capsules". The court overruled the objection, saying, "I think they are admissible in connection with the conspiracy indictment".

Defense counsel moved for judgments of acquittal. As to the conspiracy indictment, 4684, he said, "I find no evidence relating to July 10th, 1968 whatsoever". As to indictment 4687 he argued that the State had failed to establish that appellant had sold, possessed or controlled methadone. With respect to indictment 4684 the State noted that the conspiracy was charged as taking place on 10 July and continuing to 5 August. The Assistant State's Attorney thought it would include all the days therein named including 16 July. The court denied the motion with respect to indictment 4684, but defense counsel asked to be heard. He claimed that he had demanded particulars and that the bill of particulars furnished by the State "specifically states that the conspiracy was July 10, 1968".[3] The court observed that the State had given "on or about July 10" as the date of the conspiracy and had appellant wanted more particulars he could have asked what was meant by on or about. The court again denied the motion as to the conspiracy. It granted the motion as to counts 2 and 3 of indictment 4687, and denied it as to count 1, the sale of methadone. It agreed with the State that the evidence showed that appellant was an accomplice to the sale and chargeable as a principal.

Appellant elected not to testify but called his wife on

---

3. It seems that the demand for particulars was in the file before the trial court but not the bill furnished by the State. The State said, "Our answer was filed with the Clerk's office or at least our secretary was directed to do so". Defense counsel gave the court his copy of the particulars.

his behalf. Her testimony did not deal with the issue of guilt or innocence of the crimes charged. In substance it was that she had not known that her husband was involved with narcotics until his arrest on 1 August 1968, that he then went to "Man-a-Live Program" beginning the middle of August, admitted himself to Springfield in February 1969, was released the middle of March and had been steadily employed since 29 March as a longshoreman.

## I

Appellant contends that the court erred "in the admission of the testimony of the State's witnesses and the evidence with regard to conspiracy on July 16, 1968, when answers to demand for particulars were at variance with the testimony as to the date and parties involved * * *"

Assuming that timely objection was made to testimony of Cardoula on the ground that it did not relate to 10 July but rather to 16 July 1968, we find no error in admitting it. The indictment charged a conspiracy on 10 July 1968 which continued to 5 August 1968 and the particulars furnished gave the date "on or about July 10, 1968". No exceptions were filed to them. Maryland Rule 715 c. We hold that the evidence was not precluded by reason of the bill of particulars.

The particulars stated that appellant was introduced to a third person by "defendant Sabo" and then conspired to purchase methadone. The evidence was that Passano and not Sabo was involved.[4] But while it may be that objection was made on the ground of the date of the transaction, it is clear that no objection was made below because Sabo rather than Passano was named in the bill of particulars. This point was not tried and decided below because timely and proper objection to the admission of Cardoula's testimony, if made, was on the ground of the date.[5] Appellant did not claim surprise because of the

---

4. Richard Passano and Joseph Anthony Sabo were two of the eight persons charged in the conspiracy indictment.
5. Appellant claims in his brief that he asked that the testimony

evidence of Passano's participation, did not ask for a continuance to permit him to prepare a defense against such evidence, and in fact, seemed not to be concerned with the fact that it was Passano and not Sabo. He cannot rely on it for the first time on appeal. Rule 1085. We find no error compelling reversal by the admission of the evidence now challenged. We are constrained to point out, however, that the State should make every reasonable effort to see that the particulars it furnishes on demand are correct. We do not know why Sabo was named instead of Passano but it seems apparent that the State did not have the facts sufficiently before it when it furnished the particulars here.

## II

Appellant contends that the evidence was not sufficient to sustain his conviction of conspiracy. We cannot say that the court was clearly erroneous in its judgment that appellant conspired with Passano. Rule 1086; *Williams v. State*, 5 Md. App. 450. We think that the conversations in the car between appellant and Passano—"they were talking about how much in quantity [of narcotics] we would purchase, and gave [Cardoula] directions where to go"—and that appellant and Passano went together and got Robinson from whom the drug was eventually purchased, established an unlawful combination to violate the narcotic laws. The evidence showed that appellant and Passano had an understanding, a common design, in regard to the unlawful purpose. This was a conspiracy as charged. *Jones v. State*, 8 Md. App. 370; Cf. *Johnson v. State*, 10 Md. App. 652.

Appellant suggests, without elaboration, that he was entrapped. We see no such inducement here as to make valid a defense of entrapment. See *Simmons v. State*, 8 Md. App. 355. Nor was the point tried and decided below. Rule 1085. He further claims that he "seceded from the

---

now challenged be stricken or taken subject to exception but concedes that the transcript does not reflect this. His motion to "Supply omission in Transcript of Testimony" was denied by this Court on 3 December 1970.

conspiracy". We see nothing to establish that appellant "seceded from the conspiracy after notifying his co-conspirators". He was not present when the sale of the drug was completed but by that time the conspiracy had been consummated. Nor do we see any merit in the point that since the indictment against Passano had been disposed of by the entry of a *nolle prosequi* before trial appellant must be acquitted. The entry of the *nolle prosequi* here did not acquit Passano, *Greathouse v. State*, 5 Md. App. 675, 685-686, and did not preclude a conviction that appellant conspired with him. *Hurwitz v. State*, 200 Md. 578, 592. Compare *Regle v. State*, 9 Md. App. 346.

### III

Appellant claims that the evidence was not sufficient to sustain his conviction of selling methadone. We agree but for reasons other than those urged by appellant. The sale of the narcotic drug here under the law then in effect was a felony. Code, Art. 27, §§ 277 and 300. There is no question but that the sale of the drug was not by appellant but by Robinson and it is undisputed that appellant was not present, actually or constructively, when the sale was made. The lower court found that he was an accomplice and in this finding we concur. He was an accomplice because he was an accessory before the fact to the felony. *Burley v. State*, 5 Md. App. 469, 472. He was an accessory before the fact because he procured, counseled, or commanded the deed perpetrated but was not present, actually or constructively, at such perpetration. *Agresti v. State*, 2 Md. App. 278, 280. Thus he was not a principal, either in the first or second degree.[6] But he was charged as a principal and his conviction on evidence showing he was at the most an accessory before the fact was not proper as we clearly held in *Agresti* at 284. Since he was found guilty as a principal in the unlawful sale of a narcotic drug, since he could not properly be so found

---

6. In misdemeanors all those participating in the offense, whether as principal or perpetrator, aider or abettor, or accessory before the fact are chargeable as principals. *Coleman v. State*, 209 Md. 379, 384.

guilty on evidence showing him merely to have been an accessory before the fact, and since there was no evidence or inferences drawable therefrom on which the court as the trier of fact could find him guilty beyond a reasonable doubt of being a principal, the court's judgment on the evidence was clearly erroneous. Rule 1086. As the record indicates that no additional probative evidence of guilt can be adduced at a new trial the judgment under the 1st count of indictment 4687 is reversed without grant of a new trial. *Gray v. State*, 254 Md. 385.

> *As to indictment 4684, conspiracy, judgment affirmed;*
> *As to indictment 4687, sale of methadone, 1st count, judgment reversed without grant of a new trial.*
> *Costs to be paid by appellant.*