## ROBERT WALTER RETTMAN *v.* STATE OF MARYLAND

[No. 719, September Term, 1971.]

*Decided July 5, 1972.*

The cause was argued before MORTON, MOYLAN and GILBERT, JJ.

*Alan Katzen* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Edward A. DeWaters, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellant, Robert Walter Rettman, was convicted of a multifaceted violation of Art. 27, § 286, by (1) distributing cocaine, (2) possessing cocaine, (3) conspiring to distribute cocaine, and (4) conspiring to possess cocaine. Appellant was also convicted, (5) of maintaining a motor vehicle as a common nuisance for the purposes of storing, selling, administering or dispensing cocaine, and (6) carrying a concealed deadly weapon on his person. Rettman was tried by Judge John Grason Turnbull, without a jury, in the Circuit Court for Baltimore County, and was sentenced to a term of 7 years under the jurisdiction of the Department of Correctional Services.

On appeal from the judgment of the Circuit Court for Baltimore County, the appellant contends that the evidence was legally insufficient to sustain his conviction because it was "the result of an illegal entrapment."

The testimony established that a co-defendant, Charles Hiller Innes, had been contacted by one George Polaris. Polaris and Innes negotiated for the sale of hashish. Under the terms of the sale, Innes was to purchase 5 pounds of hashish for ½ oz. of cocaine and a sum of cash, later determined to be $2500.00. The hashish was to be bought from "Fred". Fred was introduced to Innes over the telephone by Polaris. As it developed, Fred is in actuality Trooper First Class Warren Pitt of the Narcotics Section of the Maryland State Police. Innes then contacted the appellant and offered to sell him an interest in the hashish for $1,000.00.

On the night of January 12, 1971, Innes drove his motor vehicle to the residence of appellant, and, according to both Innes and the appellant, requested the appellant to drive his, the appellant's vehicle, to the Boxwood Inn in Baltimore County in order to meet Fred. The reasons assigned for not using Innes' car were that it was old, he feared a breakdown, and it possessed Alabama registration plates. The testimony varied as to the precise time that the appellant entered the motel room housing Trooper Pitt and Trooper Callanan. It was clearly established, however, that when appellant entered the room he had a 1940 model Luger in his belt which he was requested to remove before negotiations concerning the drugs took place. Appellant complied with this request and removed the Luger from his person. There was some dickering over the purchase price for the hashish, but it was finally resolved at the price previously noted. Appellant voiced his desire to smoke the hashish in order to sample it. Whereupon Trooper Pitt went to his motor vehicle ostensibly to obtain a pipe. Appellant went to his car from which he took a metal container which he handed to Innes when appellant returned to the room. The metal container held two cellophane bags containing a white

powdery substance, determined later by chemical analysis to be cocaine. At that point in time the appellant and Innes were both placed under arrest. Innes was jointly indicted, along with appellant, but his case was *nol prossed.*

Innes testified that appellant knew nothing about the cocaine and that he, Innes, had received the cocaine from "Tom", an agent for George Polaris. Appellant pleaded not guilty to all counts of the indictment and defense counsel moved for the exclusion of all evidence on the basis of entrapment and illegal arrest. In *Simmons v. State,* 8 Md. App. 355, 364, 259 A. 2d 814 (1969), we observed:

> "Under the test we have adopted resort to entrapment does not render an indictment thereafter found a nullity nor does it call for the exclusion of evidence so procured. Thus *a motion to dismiss the indictment or suppress the evidence does not lie.*
>
> "The defense of entrapment having been raised, the issue of whether a defendant has been entrapped is for the trier of fact as part of its function of determining the guilt or innocence of the accused. Thus it is a matter of the sufficiency of the evidence. The burden as to the first question—did the police, directly or through their agent, induce the defendant to commit the offense charged in the indictment— is on the defendant. This may be established by a preponderance of the evidence. The burden as to the second question—was the defendant's criminal conduct due to his own readiness and not to the persuasion of the police, that is, did he have a predisposition to commit the offense— is on the State. This must be established beyond a reasonable doubt. The question of the sufficiency of the evidence would be raised by motion for judgment of acquittal. In a jury trial if the motion is denied, the issue of entrapment

would be submitted to the jury with appropriate instructions." (Emphasis supplied).

It is generally recognized that the defense of entrapment is not available to an accused where the enforcement officer or his agent acted in good faith for the purpose of discovering or detecting crime and merely supplied the opportunity for the commission of the crime to one who had the requisite criminal intent. 22 C.J.S. *Criminal Law*, § 45 (2), p. 142; *Sorrells v. United States*, 287 U. S. 435, 53 S. Ct. 210, 77 L. Ed. 413 (1932) ; *Sherman v. United States*, 356 U. S. 369, 78 S. Ct. 819, 2 L.Ed.2d 848 (1958) ; *Ferraro v. State*, 200 Md. 274, 280-281, 89 A. 2d 628 (1952) ; *Simmons v. State, supra;* Perkins, *Criminal Law*, (2nd Ed. 1969), Ch. 10, sec. 9.

In the instant case, both Innes and appellant denied that appellant knew that cocaine was in the tin can that was removed from appellant's automobile and taken to the motel room immediately before the arrest. They further denied that the appellant had any knowledge whatsoever that cocaine was to be in any manner connected with the transaction. There was some testimony that appellant was told to go get the "stuff" and get the "shit." [1] Judge Turnbull stated:

> "Well, gentlemen, it is perfectly clear to me that this Defendant knew what was going on. It is perfectly clear to me that anyone as knowledgeable and versed, as he demonstrated on the witness stand he is, in trafficking in prohibited controlled substances would certainly know that a candy tin would not be used for the purpose of carrying five pounds of hashish, and that it was perfectly obvious to him, as it is perfectly obvious to me, that this candy tin did indeed contain Cocaine, his protestations of non-knowledge to the contrary; I do not believe him. I am persuaded beyond a reasonable doubt and to a

---

1. We are advised that "stuff", "shit" and "coke" are, in the drug culture jargon, synonyms for cocaine.

> moral certainty that he knew precisely what was going on. I do not believe his co-conspirator, Mr. Innes. * * * But the fact that the State has nol prossed the case as to him [Innes] does not affect Rettman's culpability."

The question of whether or not Innes was entrapped is not before us because of the State's election to *nol pros* the proceedings against him for whatever reason.[2] Even if we assume *arguendo* that Innes was entrapped, we fail to perceive how the appellant, Rettman, would be able to avail himself of the defense of the entrapment of Innes. There is no evidence that appellant was enticed to participate in any criminal activity by any person other than his confederate Innes. No dealings were had between Polaris and appellant, nor was appellant lured by "Fred" (Trooper Pitt). The first knowledge Trooper Pitt had of Rettman's involvement in the offense was when Rettman entered the motel room in company with Innes. Rettman is not, by virtue of his being a codefendant, subrogated to Innes' possible defense of entrapment. It is stated in 22 C.J.S. *Criminal Law,* § 45 (2), p. 146:

> "The fact that one of two codefendants was entrapped does not exonerate the other."

See also *People v. Ficke,* 343 Ill. 367, 175 N. E. 543 (1931).

In *Carbajal-Portillo v. United States,* 396 F. 2d 944 (9th Cir. 1968), the Ninth Circuit Court of Appeals, considered the appeal of Rafael Vega-Picos (Vega), a co-defendant of Carbajal. The facts were that Carbajal lived in the State of Sinaloa, Mexico, where he was unemployed and destitute. A man named Osuna offered to pay him $500.00 if he, Carbajal, would deliver a package of heroin to Mexicali, a city in Mexico, and sell it, the

---

2. There is a statement in Judge Turnbull's summation that Innes, while under an apparent delirium induced by drugs "tore his own eyes out" and that factor may have prompted the State to enter the *nol pros.*

bag, to an identified purchaser. Carbajal accepted the assignment and set out for Mexicali. The Mexicali purchaser turned out to be impecunious and was not able to execute the transaction, but the latter advised Carbajal to go across the California border to the adjoining city of Calexico, California, and sell the narcotics to a Mr. Ricos (a narcotics agent of the State of California whose true name was Halcon). Carbajal complied, but left the narcotics in Mexico because of his reluctance to transport them into the United States. When Carbajal returned to Mexico, after having met with Ricos and after having promised to bring the narcotics back to the United States, he had not determined in what manner he would get the narcotics across the border. That evening he went to a bar in Mexicali, Mexico, and there for the first time he met Vega, who was a local resident. The two men ascertained that they both came from the same Mexican state and that they had mutual friends there. Further conversation ensued with one of the results being that the following day Vega drove his automobile across the border into Calexico, California. When Carbajal kept his appointment with Ricos, Vega and his automobile were in the immediate vicinity, and Carbajal made the promised delivery by removing the heroin from Vega's car. Vega was at that time arrested and charged, along with Carbajal. Both defendants contended that Vega knew nothing about the narcotics and that he undertook to assist Carbajal to enter the United States illegally for the payment of the sum of $25.00. Carbajal stated that he placed the narcotics in Vega's car without Vega's knowledge. Vega's testimony as to the delivery of the narcotics was somewhat conflicting. However, the Ninth Circuit found the record ample to sustain Vega's conviction. Carbajal was acquitted on the basis of entrapment. Judge Merrill, speaking for the majority of the Court, said:

> "Vega was not entrapped by the narcotics agent. He apparently agreed to help with the delivery of the heroin as an accommodation for

his new-found friend, and this willingness was in no way affected by the circumstances under which Carbajal had agreed to make the sale. Thus we have the paradoxical situation in which the principal participant goes free because he was entrapped, while his lesser confederate must remain in prison and serve his sentence unless the 'umbrella' of Carbajal's entrapment is stretched to cover Vega as well. Vega insists, that as a matter of fairness, it should be. We cannot agree.

"The defense of entrapment is not available to everyone who is induced, against his prior disposition, to commit a crime. It is available only where such inducement was by, or was occasioned by, a Government agent. It is made available not because inducement negatives criminal intent and thus establishes the fact of innocence; but because Government agents should not be permitted to act in such a fashion. The defense does not so much establish innocence as grant immunity from prosecution for criminal acts concededly committed. Here Carbajal goes free because what was done to him was done by a Government agent. Vega must pay the consequences of his criminal conduct because the Government agent played no part in inducing his crime."

In the instant case neither State Trooper Pitt nor George Polaris played any part as agents provocateur in inducing appellant to commit any violation of the State narcotics laws. Pitt had no conversations with appellant prior to the time appellant arrived at the Boxwood Motel as a person ready, willing and able to buy hashish.

Judge Turnbull was under no obligation to believe the protestations of innocence on the part of the appellant, nor the exculpatory statements of Innes relative to appellant's alleged lack of knowledge of the presence of

674

cocaine in the metal container or in appellant's automobile. *Elder v. State,* 7 Md. App. 368, 379, 255 A. 2d 91 (1969) ; *Williams v. State,* 11 Md. App. 350, 274 A. 2d 403 (1971) ; *Byrd v. State,* 13 Md. App. 288, 283 A. 2d 9 (1971) ; *Jones v. State,* 13 Md. App. 309, 283 A. 2d 184 (1971). The weight of the evidence and the credibility of witnesses are, in a non-jury trial, for the trial judge's determination and will not be disturbed on appeal unless clearly erroneous. *Folk v. State,* 11 Md. App. 508, 275 A. 2d 184 (1971) ; *Polisher v. State,* 11 Md. App. 555, 276 A. 2d 102 (1971) ; *Craig v. State,* 14 Md. App. 515, 287 A. 2d 330 (1972). Here, we do not believe that Judge Turnbull was clearly erroneous.

The evidence presented by the State shows directly, or supports a rational inference, that the appellant distributed cocaine, was in possession of cocaine, conspired to distribute cocaine, conspired to possess cocaine, stored cocaine in his vehicle for the purposes alleged in the indictment, and wore a concealed deadly weapon on or about his person in violation of the Maryland law.

*Judgments affirmed.*
*Costs to be paid by the appellant.*