RICHARD ELMO BYRD *v*. STATE OF MARYLAND

[No. 173, September Term, 1972.]

*Decided December 6, 1972.*

The cause was argued before MORTON, MOYLAN and GILBERT, JJ.

*Stephen R. Creyke* for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *William T. Wood, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Richard Elmo Byrd, appellant, was convicted by a jury in the Circuit Court for Montgomery County, of distributing a controlled dangerous substance, videlicet, heroin, in violation of Md. Ann. Code Art. 27, § 286(a)(1). Appellant was sentenced to seven years incarceration under the jurisdiction of the Division of Correction.

Appellant assails the judgment of conviction in a fourfold manner. He asserts the trial judge erred in:

1. refusing to allow, at State expense, the rendition of a chemist to test the alleged controlled dangerous substance.

2. failing to dismiss a defective indictment.

3. refusing to instruct the jury on the law of entrapment.

4. improperly instructing the jury as to the meaning of "reasonable doubt."

On November 15, 1971, Detective Corporal Harold L. Fremeau of the Montgomery County Police Department, went to a parking lot in Montgomery County where he

met Corporal Starkey of the Takoma Park City Police Department, Jerry Heurich and Thomas Grasso. Fremeau, together with Heurich and Grasso, drove to the rear of 1006 Quebec Terrace, the residence of the appellant. Grasso alighted from the automobile and went into appellant's apartment. When he exited the apartment he was in company with the appellant, and both entered the motor vehicle.

According to Fremeau's testimony, Heurich then asked the appellant if he had "the dope." The response was "yes" and appellant handed two small aluminum packages to Heurich in exchange for $20.00 Fremeau then purchased two small aluminum packages from the appellant in exchange for two $10.00 bills. Appellant was asked if the dope was good; whereupon he replied that the packages were "fat dimes." [1] When asked if he, Fremeau, could get more, appellant responded that he had "plenty." Appellant then left the automobile and went back to his apartment. Fremeau said that all the packages, including those sold to Heurich, never left Fremeau's vision. Fremeau conducted a field test on one of the packages. It was found to contain heroin. The Federal Bureau of Narcotics and Dangerous Drugs substantiated the finding of heroin.

Appellant took the stand and admitted selling heroin to Corporal Fremeau and to Heurich, although he denied any conversation relating to the quality of the heroin, and further denied that he had "plenty of good dope." He stated, however, that he was "in the business of selling heroin merely to support my own habit."

## I

Prior to the trial, appellant filed a "Motion for Discovery and Other Relief" in which he requested that the trial judge order the State to "[p]roduce or permit [the appellant] to inspect and test, by a privately retained

---

1. According to the testimony "fat" means that the heroin content is high, and "dimes" means a $10.00 package.

chemist, the alleged controlled dangerous substance which is the subject of the charges herein, with costs to be paid by the State." The trial judge refused to pass such an order.

Appellant argues that the denial of his motion is violative of his constitutional rights under the Fourteenth Amendment. He asserts that the case of *United States v. Hrubik,* 280 F. Supp. 481 (D. Alaska, 1968) and Maryland Rule 728 support his position.

*Hrubik* is inapposite. It is concerned solely with the right of discovery, and not the appointment of an expert witness.

Rule 728 provides in pertinent part:

"a. *Generally.*

Upon motion of a defendant and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the Court, at any time after indictment, may order the State's attorney or other person pursuant to an order to be passed as provided by section b of this Rule:

1. Objects From Defendant or by Process.
To produce and permit the defendant to *inspect* and copy or photograph designated books, papers, documents or *tangible objects* obtained from or belonging to the defendant or obtained from others by seizure or by process." (Emphasis supplied).

We perceive nothing in Rule 728 that requires the trial judge to retain a chemist or other expert at the State's expense. The language of the rule is to the effect that it is permissible for the trial judge to order the State to allow an accused to inspect tangible objects if it is both reasonable and material to the defense. Here, the State offered to allow the accused the right to "inspect" but the trial judge refused to provide the chemical expert. It is apparent from the record that counsel for the accused

was doing no more than conducting a "fishing expedition." He did not demonstrate to the trial judge's satisfaction any necessity for the appointment of the chemist, nor did he show that the expert upon whom the State relied was unqualified or not impartial.

In *Foster v. Commonwealth,* 209 Va. 297, 163 S.E.2d 565 (1968), the Supreme Court of Appeals of Virginia considered a case wherein shortly after a defendant's arrest, his clothes were taken from him and submitted to a series of tests by the Federal Bureau of Investigation. Those tests revealed that paint chips on the clothing were identical to chips from a safe involved in the crime of burglary with which the defendant had been charged. Counsel for the defendant moved for the appointment of an expert for the purpose of obtaining an independent chemical examination, with the chemist to be paid by the Commonwealth of Virginia. The trial court refused the appointment. On appeal it was contended that the refusal to appoint the expert constituted a denial of the defendant's equal protection and due process rights afforded him by the Federal Constitution. The Virginia Court held that neither the validity of the tests nor the competency of those who performed them had been challenged. Furthermore, the F.B.I. had no special interest in the case and would be as impartial as any chemical expert employed by the defendant.

This Court, in *Gaither v. State,* 13 Md. App. 245, 248, 282 A. 2d 537 (1971), said:

> "The majority of jurisdictions, including Maryland, have held that the matter [appointment of experts] is one within the sound discretion of the trial court (See 34 A.L.R.3rd § 3(c) p. 1269-1272); *Avey v. State,* 1 Md. App. 178 (1967); *Swanson v. State,* 9 Md. App. 594 (1970). In the exercise of this discretion, we have held that this type of pretrial service (investigators and experts) is required to be made available to indigents only when it is shown

these services are necessary to afford the accused an opportunity to fairly present his defense."

We find that the trial court, in the instant case, did not abuse its discretion when it declined to appoint an expert in the field of chemistry in order to verify or contradict the report of an apparently disinterested Federal Bureau of Narcotics chemist.

## II

Appellant charges that the indictment in the instant case is fatally defective because it fails to specify to whom the heroin was sold. The first count of the indictment states, in pertinent part:

"The Grand Jurors of the State of Maryland, for * * * Montgomery County, * * * present that Richard Elmo Byrd also known as Java Rick * * *, on the fifteenth day of November, in the year * * * nineteen hundred and seventy-one * * *, did unlawfully deliver and distribute a controlled dangerous substance of Schedule I, to wit, Heroin, a narcotic drug, in violation of Article 27, Section 286(a)(1) of the Annotated Code of Maryland * * *."

Article 21 of the Maryland Declaration of Rights provides in part:

"That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defense; * * *."

We have held that an indictment is sufficient if it informs an accused of the accusation against him, and if it is made with such sufficient definiteness as to prevent the accused from being charged again with the same offense in some future prosecution. *Mason v. State*, 12 Md.

App. 655, 280 A. 2d 753 (1971) ; *Ward v. State,* 9 Md. App. 583, 267 A. 2d 255 (1970). The test for the sufficiency of the indictment is, thus, two-pronged:

> 1. The indictment must inform the accused of the offense for which he is charged, and 2. The indictment must preclude the possibility of a future prosecution for the same offense.

In *Baker v. State,* 6 Md. App. 148, 156, 250 A. 2d 677 (1969), we said:

> "The general rule is that an indictment charging an offense denounced and defined by statute should be as fully descriptive of the offense as is the language of the statute and should allege every substantial element of the offense as defined by the statute without material diversion or departure from the fair intendment of the terms of the statute, and with reasonable particularity of time, place and circumstances."

The statute that the appellant was accused of violating, Md. Ann. Code Art. 27, § 286 (a) (1), provides:

> "(a) Except as authorized by this subheading, it shall be unlawful for any person:
> (1) To manufacture, *distribute,* or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance * * *." (Emphasis supplied).

The indictment followed the statute in that it charged the appellant with distribution on November 15, 1971 of a controlled dangerous drug, to wit, heroin. It is true that the indictment uses the words "did unlawfully deliver and distribute," and the statute does not utilize the word "deliver." We think the word "deliver," as used in the indictment, to be, at most, mere surplusage and is not in any way fatal to the validity of the indictment.

Furthermore, "deliver" is but an element of "distribute." [2]

In IV Wharton's, *Criminal Law and Procedure* (Anderson, 12th Ed. 1957), § 1794, p. 618, it is said:

> "It is not necessary that an indictment contain all the language of the statute on the subject; all that must be alleged is that which is requisite to charge the offense, or that which constitutes the essential ingredients of the offense as denounced by the statute." (Footnotes omitted).

In § 1796, ibid, pp. 622-623, it is found:

> "An indictment or information for such an offense is sufficient if it follows the language of the statute substantially or charges the offense in equivalent words or others of the same import if the defendant is thereby fully informed of the particular offense charged, and the court is enabled to see therefrom on what statute the charge is founded." (Footnotes omitted).

We further said in *Baker, supra,* at 156:

> "It is no longer open to controversy in this State that as to the question whether an indictment charges an offense, 'in indictments for statutory offenses in describing the act, the doing of which, or omitting to do which, constitutes the crime, it is sufficient to describe said act in the words of the statute * * *. In other words, the language of the statute, when used, is a sufficient description of the crime; and if

2. Distribute is defined in Md. Ann. Code Art. 27, § 277(1) as follows: " '*Distribute*' shall mean to deliver a controlled dangerous substance."

Paragraph (i) of the same section of the code defines *deliver* or *delivery* to mean "the actual, constructive, or attempted transfer, exchange, or delivery of a controlled dangerous substance from one person to another with or without remuneration, whether or not there exists an agency relationship."

the statute contains all the elements necessary to constitute a crime, the indictment is sufficient to describe the offense, if laid in the words of the statute.' *State v. Lassotovitch* [162 Md. 147, 159 A. 362 (1932)]."

See also *Dunphy v. State*, 13 Md. App. 671, 284 A. 2d 631 (1971) ; *Dean v. State*, 13 Md. App. 654, 285 A. 2d 295 (1971).

We find no merit in the appellant's contention that the indictment should aver to whom the appellant sold the proscribed narcotic drug. Moreover, the indictment is in the customary form of such indictments, and it

"* * * set[s] forth all the elements necessary to apprise the appellant of the crime for which he was being tried. Had there been any doubts in the appellant's mind, they could have been resolved by utilizing the procedure authorized by Md. Rule 715 [Bill of Particulars]." *Presley v. State*, 6 Md. App. 419, 430, 251 A. 2d 622 (1969).

Applying the two-pronged test to the case at bar, we hold that the indictment met the test of the first prong because the utilized language followed the statute and sufficiently informed the appellant of the offense charged, videlicet, unlawfully distributing heroin in Montgomery County on November 15, 1971.

The test of the second prong is likewise met in that the indictment is couched in such words as to preclude the appellant from being required to defend himself against the same charge in some future prosecution.

As we view the indictment, the result of not specifically identifying therein the person or persons to whom the appellant distributed the heroin would cause no harm to the appellant, but, on the contrary, may harm the State. If at the trial the State had sought to prove that the appellant did, in Montgomery County on November 15, 1971, sell heroin to a particular person, and it failed

to meet its burden of proof, it would be precluded from thereafter showing that the appellant distributed heroin in Montgomery County on November 15, 1971, regardless of to whom the drug was sold or how many sales the appellant made, or is alleged to have made, on that particular date, in that particular county.

### III

We next turn to the appellant's contention in regard to the failure of the trial court to grant a requested advisory instruction on entrapment.[3]

The record reveals that the appellant, his wife, and a third witness all testified that Grasso had pleaded with the appellant to sell him heroin to give to "sick friends." The defense's testimony was that Grasso was in the apartment in which the appellant resided for approximately twenty minutes, urging and beseeching the appellant to sell him the heroin for his friends. The appellant and his wife both stated that the appellant did not want to sell the heroin because they were addicted to it and they needed it for their own personal use. Significantly, Grasso did not testify. During the course of the cross-examination, the following occurred:

[Assistant State's Attorney]

"Q  Now, you have mentioned that you were planning on moving out of this 1006 Quebec Terrace address?

[Appellant]

A  Yes, sir.

Q  And you were trying to get some money together so you could do that?

A  Yes, sir, trying to get money enough so I

---

3. Md. Rule 756 b provides that a trial judge shall give advisory instructions to a jury when requested to do so. The instructions are to embrace every essential question or point of law supported by the evidence. *Peterson v. State,* 15 Md. App. 478, 498, 292 A. 2d 714 (1972); *Mason v. State,* 12 Md. App. 655, 661, 280 A. 2d 753 (1971); *Gaskins v. State,* 7 Md. App. 99, 105, 253 A. 2d 759 (1969).

could go to Pennsylvania and live with my wife's parents.

Q Is that why you were in the business of selling heroin?

A No, sir.

Q You were trying to make money to do that?

A No, sir. I was in the business of selling heroin merely to support my own habit."

At the conclusion of the entire case, the appellant moved for a judgment of acquittal and grounded his argument on *Simmons v. State*, 8 Md. App. 355, 259 A. 2d 814 (1969). There we said, at 364:

"PROCEDURE AS TO THE DEFENSE OF ENTRAPMENT

Under the test we have adopted resort to entrapment does not render an indictment thereafter found a nullity nor does it call for the exclusion of evidence so procured. Thus a motion to dismiss the indictment or suppress the evidence does not lie.

*The defense of entrapment having been raised, the issue of whether a defendant has been entrapped is for the trier of fact as part of its function of determining the guilt or innocence of the accused.* Thus it is a matter of the sufficiency of the evidence. The burden as to the first question—did the police, directly or through their agent, induce the defendant to commit the offense charged in the indictment—is on the defendant. This may be established by a preponderance of the evidence. The burden as to the second question—was the defendant's criminal conduct due to his own readiness and not to the persuasion of the police, that is, did he have a predisposition to commit the offense—is on the State. This must be established beyond a reasonable doubt. The question of the sufficiency of

the evidence would be raised by motion for judgment of acquittal. In a jury trial if the motion is denied, the issue of entrapment would be submitted to the jury with appropriate instructions." (Footnotes omitted). (Emphasis supplied).

Here, the trial judge denied the motion for judgment of acquittal and declined to give an instruction on entrapment, saying:

"* * * [W]e don't find anything in the evidence before us that the government or the police officer in this case exercised any persuasion over the defendant, and apparently the only thing that the defendant relies on to buttress his contention that there was entrapment is that there was repeated and persistent solicitation of the defendant to cause him to make the sales for which he is now charged.

Now, there is no evidence that the police officer made any repeated or persistent efforts to solicit the defendant to make these sales, and there is no evidence in the record that any agent of the police did so.

* * *

So for two reasons, and because there is no evidence that the State or its agents participated in any solicitation or procurement, and (2), even if there were, there is no evidence there was repeated and persistent solicitation of a previously law abiding citizen in order to overcome his reluctance to commit a crime."

It was established that Grasso was accompanied to the premises by Corporal Fremeau where the appellant lived. Fremeau was apparently known by Grasso to be a police officer, and, according to the defense testimony, Grasso beseeched appellant to sell him the heroin. A rational inference may be drawn from the evidence that

Grasso was the agent provocateur of the State. Appellant's answer to the Assistant State's Attorney, "I was in the business of selling heroin merely to support my own habit" does not *per se* remove the appellant from the protection of the umbrella of entrapment. We think the testimony of the defense to have raised the issue of entrapment through testimony showing that the appellant was induced by the police, or through their agent, to commit the offense charged. *Ergo,* under *Simmons, supra,* the appellant was entitled to an instruction on the law of entrapment. It was not, under the circumstances of this case, for the trial judge to decide as a matter of law that there was no entrapment. Under our Constitution, the jury in a criminal proceeding is the judge of both the law and the fact. Maryland Constitution, Art. XV, § 5.[4]

In *Simmons, supra,* this Court noted that in *Sherman v. United States,* 356 U. S. 369, 78 S. Ct. 819, 2 L.Ed.2d 848 (1958), entrapment was established as a matter of law based on the undisputed testimony of the prosecution's witnesses. There was no conflict in the evidence nor was there any question regarding the credibility of witnesses. Commenting thereon, we said:

> "In our jurisdiction, where the jury are the judge of the law as well as the facts, we think that both questions pertaining to the issue of entrapment must be for the jury." *Simmons, supra,* at 365, n. 7.

The two questions to which we alluded in *Simmons* are (1) did the appellant meet the burden of showing that he was induced by the police directly or through their agent to commit the offense? and (2) did the State meet its burden of showing that the appellant's criminal conduct was due to his own readiness and not to the persuasion of the police or their agent? *See also Rettman v.*

---

4. Art. XV, § 5 of the Constitution of Maryland provides:
   "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." *See* Md. Ann. Code Art. 27, § 593.

*State,* 15 Md. App. 666, 292 A. 2d 107 (1972). The trial judge committed reversible error in not granting the requested advisory instruction.

In view of our holding herein, we need not discuss in any detail the appellant's fourth contention. However, we do note that the trial judge's instructions, when read as a whole, sufficiently apprised the jury of the meaning of the words "reasonable doubt." We think that the appellant's fourth contention is devoid of merit.

*Judgment reversed and case remanded for a new trial.*