JAMES E. SANDS, a/k/a CLYDE EDWARD
OGLESBY *v.* STATE OF MARYLAND

[No. 295, September Term, 1969.]

*Decided March 4, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Milton Kaplan* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Charles
E. Moylan, Jr., State's Attorney for Baltimore City,* and
*Charles A. Herndon, Jr., Assistant State's Attorney for
Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Once again we are obliged to set aside convictions be-
cause evidence obtained by a search and seizure incident
to a warrantless arrest was admitted without the prose-
cution sufficiently establishing that the arrest was valid.
See *Winebrenner v. State,* 6 Md. App. 440.

James E. Sands [1] (appellant) was found guilty at a
court trial in the Criminal Court of Baltimore of break-
ing the dwelling house of Bernard A. Ward situate at
2301 Monticello Road on 6 February 1969 in the daytime
with intent to steal and of grand larceny of Ward's goods
on the same date. He filed a pre-trial motion to suppress
evidence, one of the grounds of which was that his ar-
rest was illegal. The matter was not determined prior to
trial. During the trial, after the *corpus delicti* of the
breaking and the grand larceny had been proved, appel-
lant brought the motion to the attention of the court,
again challenged the arrest and objected to the admis-
sion of tangible evidence seized. See Maryland Rule 729.
Officer Leonard Richard Johnson of the Baltimore City
Police Department testified that he was on duty on 6
February 1969 in a marked radio car. He was in the vi-

---

1. Appellant was so named in the indictment. At the trial when
appellant took the stand on his own behalf he gave the name
"Clyde Edward Oglesby." He said, "I use the name of James E.
Sands. * * * When arrested I gave the name James Sands." He
claimed that his "true name" was Clyde Edward Oglesby.

cinity of Gwynns Falls Parkway and Dukeland Street when he received a call over the police radio "that wanted for investigation and seen fleeing the address 2301 Monticello Road were several colored males entering a 1958 Chevrolet Sedan, blue, Maryland License GY-7208, driving towards Gwynns Falls Parkway. * * * At that point I observed a 1958 Chevrolet Sedan going east on Gwynns Falls Parkway pass me. I proceeded to follow the automobile. This is in the 2800 block of Gwynns Falls Parkway. I proceeded to follow the automobile to the 2500 block of Gwynns Falls Parkway at Warwick Avenue where it was stopped for a traffic signal. I had come close to the rear of the automobile so as to see the tag number, and the number was GY-7208. I saw there were four occupants in the car, and they were placed under arrest." The court asked the witness again to tell what the call was that he received and the officer said, "Wanted for investigation and seen fleeing the address 2301 Monticello Road were several colored males entering a 1958 Chevrolet Sedan, blue." He recounted that there were four occupants in the car he saw, that when it stopped for the traffic signal "I got out of my car and went over, I spoke to the occupants of the car, and placed them under arrest at that point." He identified Sands as one sitting in the right front seat. The officer was asked what he said to the occupants and replied, "Well, they were advised they were being placed under arrest, and at that point I don't believe anyone had said anything. I was rather excited myself. I was calling for help." Asked what he saw in the automobile the officer said, "There was a TV set sitting on the back seat. It could be seen from the rear of the automobile and, also, from the side as I pulled alongside the car." The State said that "this is all the testimony we have on the validity of the arrest." The court reserved its determination of the validity *vel non* of the arrest and the State adduced evidence as to what was seized from the automobile. The court then entertained argument on the validity of the arrest. The Assistant State's Attorney referred to the police re-

port, urging that from the report the arresting officer knew that the felony of daytime breaking of a dwelling with intent to steal or grand larceny had been committed —"They said over the radio they were wanted for investigation of a burglary." Defense counsel correctly pointed out that there was no such evidence before the court, that the officer had merely said the information he received was that the described men were "wanted for investigation." There was no evidence before the court as to what information the police had received which served as the basis for the radio broadcast and no evidence as to what had been placed on the air except as testified by the arresting officer.

The court denied the motion to suppress and admitted the evidence seized by a search of the automobile. In so ruling the court noted that burglary is a generic term used by laymen and by most police officers to cover any kind of a breaking and entering. It said:

> "Now, that is what was troubling me in this case because the report was of a burglary. And I was under the impression at that time that this particular kind of a burglary was a misdemeanor, but, as Mr. Herndon points out, the statute has been amended to make this a felony so that we are now dealing with the felony Rule, which is that the police officer who makes the arrest may rely on probable cause in two regards, one, probable cause that a felony has in fact been committed and two, probable cause that the person arrested is the felon. So that there is no specific, absolute requirement that the felony has in fact been committed nor that the arrestee is in fact the felon as long as probable cause exists with reference to both of those factors. And based on the evidence in this case, I find that probable cause did exist with reference to both of the factors and that, therefore, the officer was correct in stopping the car and

arresting the occupants and recovering the articles that were in the car and, therefore, the arrest is declared valid and the State's exhibits are now admitted into evidence." [2]

The rule upon which the lower court relied has been long established in this jurisdiction. A police officer may arrest without a warrant where there is probable cause to believe that a felony has been committed and that the person arrested committed it. The general rule is that probable cause in this context exists when the facts and circumstances within the knowledge of the arresting officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious person in believing that a felony had been committed by the person arrested. *Simms v. State,* 4 Md. App. 160, 166-167. Both the Court of Appeals and this Court have held that a report of a felony and a description of the perpetrators broadcast over a police radio may furnish probable cause for an arrest. *Hopkins and Terry v. State,* 239 Md. 517; *Darby v. State,* 3 Md. App. 407. But it is not essential that the arresting officer himself have probable cause for the arrest, where another member of the police team has probable cause and the arresting officer has been alerted to make the arrest over the police radio. *Robinson v. State,* 4 Md. App. 515, 524. However, in any event, the evidence before the trial court must be sufficient to show that the arresting officer himself had probable cause or, if he did not, that a member of the police team did, and that the arresting officer was alerted to make the arrest.

The evidence before the trial court here was not sufficient to establish either that the arresting officer himself had probable cause to believe that a felony had been committed or that a member of the police team had probable

---

2. The breaking of a dwelling house in the daytime with intent to steal is proscribed by Code, Art. 27, § 30 (b) and is designated a felony. Prior to Chapter 345, Acts 1965, it was a misdemeanor and was included in § 32. See *Reagan v. State,* 4 Md. App. 590, 594-595.

cause to so believe. The ruling of the court was based upon an incorrect factual premise as to the evidence before it; there was no evidence adduced that the police had information giving them reason to believe that a breaking of a dwelling house, or a "burglary" had been committed. The only evidence before the court was that the arresting officer had received a broadcast over the police radio that several colored males seen fleeing from certain premises in a described car were "wanted for investigation." Investigation of what was not disclosed; it could have been some misdemeanor or some felony or for some other purpose. Thus the radio broadcast was not sufficient for the arresting officer to have probable cause to believe that a felony had been committed, nor was there evidence showing that a member of the police team had reason to so believe. And the personal observations of the arresting officer were not sufficient for him to so believe. It is true that he saw four colored males in the automobile described, but all he observed prior to the arrests was a TV set on the back seat. These observations, in the middle of the afternoon, in an automobile on the public street, which had stopped for a traffic signal, did not give him probable cause to believe that a felony had been committed. See *Brown v. State*, 5 Md. App. 367; compare *Matthews v. State*, 3 Md. App. 555. We note that it is clear that the arresting officer did not have probable cause to believe a misdemeanor had been or was being committed in his presence and that appellant was the misdemeanant, nor did the court so find. See *Mercer v. State*, 6 Md. App. 370. We find that the arrest was illegal.

The State relies on *Williams v. State*, 3 Md. App. 115. But in *Williams*, unlike the instant case, the evidence showed that the police had information that a felony had been committed. The State also suggested in oral argument before us that the arresting officer saw a .32 revolver which was visible, "laying on the floor in the rear of the automobile on the right hand side." It urged that even if the first arrest was illegal, this would constitute

probable cause for a subsequent arrest. See *Gaudio and Bucci v. State*, 1 Md. App. 455. But the testimony of the arresting officer showed that this observation was made when the car was searched, not before, and as the search was incident to an invalid arrest, the observation of the weapon could, in no event, support a subsequent arrest.

We hold that the search of the car and the seizure of the items as a result thereof were unreasonable as incident to an illegal arrest. Therefore the court erred in denying the motion to suppress the evidence and in admitting the challenged items.

In view of our holding we do not reach the other questions presented by appellant.[3]

We deem it advisable to point out, however, that although the court rendered a verdict of guilty under the first count of the indictment, charging the offense proscribed by Code, Art. 27, § 30 (b), and a verdict of guilty under the third count charging grand larceny, it imposed sentence only on the conviction under the third count. It made abundantly clear that this was its intention. "I intend to impose a sentence only on the third count instead of the first and third counts. * * * Sentence will be imposed only on the third count. * * * The sentence under count three of the indictment, larceny, is a term of four years in the custody of the Department of Correction, dating from the day of the arrest, February 6th of 1969." Thus it is patent that the court did not impose a general sentence on the two convictions and, in fact, imposed no sentence at all on the conviction under the first count. It seemed from remarks of the court that the reason for this was that it was troubled about the possibility of a merger of the convictions. The conviction of larceny did not merge into the conviction of breaking with intent to

---

3. Appellant questions the sufficiency of the first count of the indictment. We note that it was drawn substantially in the language of Code, Art. 27, § 30 (b) and designated that the charge was "contrary to the form of the Act of the Assembly in such case made and provided." It clearly apprised appellant of the crime charged. The offense being sufficiently particularized, it was not necessary to specify the exact statute or section thereof proscribing the offense. *Baker v. State*, 6 Md. App. 148.

steal. *Shelton v. State,* 3 Md. App. 394, 402. See *Tender v. State,* 2 Md. App. 692, note 5 at 700.

Although "conviction" and "sentence" are commonly used synonymously, they are legally distinct. Conviction is the determination of guilt of an accused; sentence is the judgment entered thereon. "A criminal case is not complete and the case is not disposed of until sentence has been pronounced." 5 *Wharton's Criminal Law and Procedure* (1957) § 2176, p. 370. "Sentence shall be imposed without unreasonable delay." Maryland Rule 761 a. Cf. *Holt v. Warden,* 223 Md. 654, 657. Code, Art. 5, § 12 provides in relevant part: "A defendant in a criminal action may appeal to the Court of Special Appeals from any conviction *where the sentence* is other than death * * *." (Emphasis supplied). The general rule is that such appeal is premature until after final judgment. *Greathouse v. State,* 5 Md. App. 675. Therefore, ordinarily, appellant could not appeal from his conviction under the first count because there was no sentence imposed thereon and thus no final judgment. But here the failure to impose sentence was not by inadvertence but by design. As the conviction under the first count would be set aside, by our holding, even if final judgment had been reached by the imposition of sentence, we shall set it aside in any event in the light of the particular and unusual circumstances here existent.

> *Judgment under the third count reversed; conviction under the first count reversed; case remanded for a new trial.*