ANTHONY SYLVESTER FISHER v. STATE
OF MARYLAND

[No. 897, September Term, 1974.]

*Decided October 3, 1975.*

244

The cause was argued before MORTON, POWERS and MENCHINE, JJ..

C. Daniel Saunders, Assigned Public Defender, for appellant.

Alexander L. Cummings, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, and Thomas J. Clark, State's Attorney for Queen Anne's County, on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

## The Defense of Entrapment

When the law of entrapment comes to an appellate court the case invariably presents questions not only of the substantive law, but of procedure for applying that law to the evidence in the case.

In *Simmons v. State*, 8 Md. App. 355, 259 A. 2d 814 (1969), Judge (now Chief Judge) Orth, for this Court, wrote a comprehensive review, both of the substantive law relating to the defense of entrapment, and of the correct procedures for applying that law. We cited and discussed cases in which the Court of Appeals had expressed itself on the subject. We noted that that Court had "recognized that there were two divergent views held by respected authorities concerning the conditions under which entrapment should apply", but had expressly not adopted either view. We discussed those views, and their sources. Those sources were the majority opinions of the Supreme Court of the United States in *Sorrells v. United States*, 287 U. S. 435, 77 L. Ed. 413, 53 S. Ct. 210 (1932), *Sherman v. United States*, 356 U. S. 369, 2 L.Ed.2d 848, 78 S. Ct. 819 (1958), and *Masciale v. United States*, 356 U. S. 386, 2 L.Ed.2d 859, 78 S. Ct. 827 (1958), which held one view, and the concurring opinions in *Sorrells* and *Sherman* and the dissent in *Masciale*, all espousing the other.

We felt in *Simmons* that it was advisable to adopt a rule regarding the defense of entrapment. We did so, following

*Sorrells, Sherman,* and *Masciale.* The Court of Appeals approved in *Grohman v. State,* 258 Md. 552, 267 A. 2d 193 (1970). The Court quoted extensively from *Simmons,* and termed it "a clear cut expression of the view adopted by Maryland * * * ."

In expressing the rule we said in *Simmons,* at 360-61:

> "We construe the opinion of the Court in *Scrrells* as enunciating what has been termed the 'origin of interest' test. This test was stated in substance by Judge Learned Hand in *United States v. Sherman,* 200 F. 2d 880 (2d Cir. 1952). Probing the aspect of inducement he concluded that in *Sorrells* 'all the Court agreed as to the meaning of inducement: it was that someone employed for the purpose of the prosecution had induced the accused to commit the offense charged which he would not have otherwise committed.' At 882. Inducement was further explained in *Sherman v. United States,* 356 U. S. 369, at 372:
>
>> ' * * * [T]he fact that government agents "merely afford opportunities or facilities for the commission of the offense does not" constitute entrapment. Entrapment occurs only when the criminal conduct was "the product of the *creative* activity" of law-enforcement officials. (Emphasis supplied.) See 287 U. S. at pages 411, 451, 53 S. Ct. at pages 212, 216. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.' "

We quoted further, 8 Md. App. at 362, from the comments of Judge Learned Hand, when he said:

> " ' * * * [I]t is a valid reply to the defense, if the prosecution can satisfy the jury that the accused was ready and willing to commit the offense

charged, whenever the opportunity offered. In that event the inducement which brought about the actual offense was no more than one instance of the kind of conduct in which the accused was prepared to engage; and the prosecution has not seduced an innocent person, but has only provided the means for the accused to realize his pre-existing purpose.
* * *

" ' Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense. On the first question the accused has the burden; on the second the prosecution has it.' "

Our reliance upon *Sorrells* and *Sherman* as persuasive, although not binding, was not misplaced. Very recently, the Supreme Court, in *United States v. Russell,* 411 U. S. 423, 36 L.Ed.2d 366, 93 S. Ct. 1637 (1973), adhered to the view of entrapment it had first adopted in *Sorrells* in 1932 and had reaffirmed in *Sherman* in 1958. The Court reversed an order of the U. S. Court of Appeals for the Ninth Circuit, which itself has reversed a conviction in a jury trial in the U. S. District Court, for having unlawfully manufactured and processed and sold a prohibited drug. At the trial of the Russell case in the District Court, the judge had given what the Supreme Court referred to as a standard entrapment instruction, the substance of which was not at issue in the case. The facts show that a Federal narcotics agent had approached Russell and his two codefendants, all of whom the agent suspected of manufacturing methamphetamine. He offered to supply them with one of the chemical components which was difficult to obtain, in exchange for a share of the drug they produced. They accepted the proposal and, using the chemical supplied by the agent along with other chemicals, did manufacture the drug. The Court, after referring to Russell's argument that on the facts there was entrapment as a matter of law, said, at 427:

"The Court of Appeals agreed, although it did not find the District Court had misconstrued or misapplied the traditional standards governing the entrapment defense. Rather, the court in effect expanded the traditional notion of entrapment, which focuses on the predisposition of the defendant, to mandate dismissal of a criminal prosecution whenever the court determines that there has been 'an intolerable degree of governmental participation in the criminal enterprise.' In this case the court decided that the conduct of the agent in supplying a scarce ingredient essential for the manufacture of a controlled substance established that defense."

Mr. Justice Rehnquist, speaking for the Court, pointed out that in *Sorrells* and in *Sherman* the principal element in the defense of entrapment was held to be the defendant's predisposition to commit the crime, while the concurring opinions in both cases would make the essential element of the defense turn on the type and degree of governmental conduct. The Court said, at 435:

"Those cases establish that entrapment is a relatively limited defense. It is rooted not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law enforcement,' but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense but was induced to commit them by the government."

The Court declined to "reconsider" the theory of the entrapment defense as it is set forth in the majority opinions in *Sorrells* and *Sherman*. It said, at 434-35:

"We are content to leave the matter where it was left by the Court in *Sherman*:

248

'The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, "A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." ' "

Having examined and discussed the substantive law in *Simmons v. State, supra,* we turned to questions of procedure. We said, at 364-65:

"The defense of entrapment having been raised, the issue of whether a defendant has been entrapped is for the trier of fact as part of its function of determining the guilt or innocence of the accused. Thus it is a matter of the sufficiency of the evidence. The burden as to the first question — did the police, directly or through their agent, induce the defendant to commit the offense charged in the indictment — is on the defendant. This may be established by a preponderance of the evidence. The burden as to the second question — was the defendant's criminal conduct due to his own readiness and not to the persuasion of the police, that is, did he have a predisposition to commit the offense — is on the State. This must be established beyond a reasonable doubt. The question of the sufficiency of the evidence would be raised by motion for judgment of acquittal. In a jury trial if the motion is denied, the issue of entrapment would be submitted to the jury with appropriate instructions."

It should here be emphasized that the defense of entrapment cannot be considered as "having been raised" —

that entrapment cannot become an issue for the trier of the facts — unless there is sufficient evidence which, if deemed weighty and credible by the trier of the facts, would support a finding that the police, directly or through their agent, induced the defendant to commit the offense charged. Unless there is evidence to show inducement, the second question — predisposition — is irrelevant.

The initial test of the evidence, within the framework of the substantive law of entrapment, is always a matter of law for the court. The question to be decided depends upon how the question is raised.[1] A motion for judgment of acquittal

---

1. In United States v. Russell, supra, and in Masciale v. United States, supra, the Supreme Court held that the evidence did not establish entrapment as a matter of law, and that the question was properly submitted to the jury. In Sherman v. United States, supra, the Court held that there was entrapment as a matter of law, and that the question should not have been submitted to the jury. In Sorrells v. United States, supra, the Court held that the defense was raised, that the accused was entitled to have it considered, and that the trial court erred in holding that as a matter of law there was no entrapment.

In Hummelshime v. State, 125 Md. 563, 93 A. 990 (1915) and Callahan v. State, 163 Md. 298, 162 A. 856 (1932), the Court of Appeals commented upon arguments of enticement, inducement, or entrapment, but observed that such questions were not before the Court for determination.

The first entrapment case to reach the Court of Appeals after Maryland judges were empowered to rule on sufficiency of evidence in criminal cases, and to give advisory instructions, was Ferraro v. State, 200 Md. 274, 89 A. 2d 628 (1952), tried below without a jury. The Court said that there was no evidence legally sufficient to support the defense of entrapment — certainly not to support a peremptory verdict of acquittal.

In no case has the Court of Appeals held that the evidence showed entrapment as a matter of law. In a non-jury trial the question could arise only in that posture. It may appear as a contention that the trial judge was clearly erroneous in reaching a verdict of guilty, which legally is the same thing. Williams v. State, 5 Md. App. 450, 459-60, 247 A. 2d 731 (1968), cert. denied, 252 Md. 734 (1969). See Matthews v. State, 228 Md. 401, 179 A. 2d 892 (1962); Stewart v. State, 232 Md. 318, 193 A. 2d 40 (1963); Snead v. State, 234 Md. 63, 197 A. 2d 920 (1964); Cross v. State, 235 Md. 377, 201 A. 2d 767 (1964); Pointer v. State, 239 Md. 641, 212 A. 2d 260 (1965); and Smith v. State, 242 Md. 712, 219 A. 2d 16 (1966).

Even in those Court of Appeals cases which were tried below before a jury it appears that the entrapment question arose in the same posture. In Baxter v. State, 223 Md. 495, 165 A. 2d 469 (1960), cert. denied, 366 U. S. 968 (1961), the Court said that the evidence did not support a peremptory verdict of acquittal. In Lane v. State, 226 Md. 81, 172 A. 2d 400 (1961), cert. denied, 368 U. S. 993 (1962), the Court merely said that the conduct which the appellant contended amounted to entrapment was permitted police activity. In Whyte v. State, 229 Md. 459, 184 A. 2d 738 (1962), the Court said that the claim of entrapment was groundless — the issue was submitted to the jury on proper instructions.

Grohman v. State, 258 Md. 552, 267 A. 2d 193 (1970), cert. denied, 401 U

based upon that defense requires the court to decide whether there is undisputed evidence, so clear and decisive that reasonable minds, applying the correct law, could not differ in finding that the defendant was induced by the police to commit the offense, and that his criminal conduct was due to the persuasion of the police, and not to his own readiness or predisposition to commit the offense. Only when such is the state of the evidence is there entrapment as a matter of law.

In considering a motion for judgment of acquittal on the ground of entrapment, the court is concerned only with sufficiency of the evidence, and in these aspects:

1. Is the evidence, whatever its source, sufficient to support a finding that the defendant was induced by the police or their agent to commit the offense? If there is not, the defense is not "raised", and the motion must be denied.

2. If the evidence is sufficient to support the

---

S. 982 (1971), was a contempt case, which the Court said was in the nature of a criminal contempt proceeding. The Court held that entrapment was available as a defense, but that the evidence did not support it.

Entrapment has been claimed in numerous cases before this Court. Cases which were tried below without a jury are Jarrett v. State, 1 Md. App. 448, 230 A. 2d 683 (1967); Simmons v. State, 8 Md. App. 355, 259 A. 2d 814 (1969); Rettman v. State, 15 Md. App. 666, 292 A. 2d 107, cert. denied, 266 Md. 741 (1972); Hignut v. State, 17 Md. App. 399, 303 A. 2d 173 (1973); and Schuman v. State, 19 Md. App. 400, 311 A. 2d 460 (1973), cert. denied, 271 Md. 743 (1974). In each of them we found that the evidence supported the conviction.

In these jury cases we held that there was no evidence of entrapment: Dolan v. State, 1 Md. App. 292, 229 A. 2d 443 (1967); Gamble v. State, 2 Md. App. 271, 234 A. 2d 158 (1967); Holt v. State, 3 Md. App. 544, 240 A. 2d 355, cert. denied, 251 Md. 750 (1968); and Poff v. State, 4 Md. App. 186, 241 A. 2d 898, cert. denied, 251 Md. 751 (1968). In Gill v. State, 11 Md. App. 593, 275 A. 2d 505, cert. denied, 262 Md. 747 (1971), and in Berlin v. State, 12 Md. App. 48, 277 A. 2d 468, cert. denied, 263 Md. 710 (1971), we held that the defendant was not entitled to a judgment of acquittal on his defense of entrapment.

In all of these cases, jury or non-jury, the legal effect of our holding, however we expressed it, was that the evidence did not, as a matter of law, show entrapment.

In Regle v. State, 9 Md. App. 346, 264 A. 2d 119 (1970), in which we reversed on other grounds, we said that the defense of entrapment is applicable in conspiracy cases.

In Byrd v. State, 16 Md. App. 391, 297 A. 2d 312 (1972), we held that the defense of entrapment was "raised" and that the trial judge erred in not granting a requested advisory instruction on entrapment.

finding, is the evidence also sufficient to support a finding that the defendant was not induced? If so, there is an issue of fact, and the motion must be denied.

3. Even if the evidence shows inducement as a matter of law, is the evidence sufficient to support a finding that the defendant's criminal conduct was due to his own readiness or predisposition to commit the offense? If so, there is an issue of fact, and the motion must be denied.

4. If the evidence shows inducement as a matter of law, and also shows as a matter of law that the defendant's criminal conduct was due solely to that inducement, and not to his own readiness or predisposition to commit the offense, then as a matter of law there is entrapment, there is no issue of fact, and the motion must be granted.

In this test of legal sufficiency, the court is not concerned with any burden of proof. A burden of proof is a yardstick used only by the trier of the facts in performing the function of assessing weight and credibility of evidence.

When the defense of entrapment is raised, and there are issues of fact, as in our examples 2 and 3, those issues are to be resolved by the trier of the facts, with due consideration to any applicable burden of proof. If the trier of the facts is a jury, the court shall, upon request, give appropriate advisory instructions on the law of entrapment. *Byrd v. State, supra,* at 400, note 3.

### The Present Case

Anthony Sylvester Fisher, appellant here, was found guilty by a jury in the Circuit Court for Queen Anne's County of distribution and possession of heroin. After Fisher's motion for a new trial was heard and denied, a sentence of eight years was imposed.

On appeal, Fisher raises three issues which he says constitute reversible errors:

(1) the admission in evidence of the alleged heroin "despite gross defects in the chain of custody";

(2) prejudicial comments by the trial judge regarding those defects; and

(3) the trial judge's refusal to instruct the jury on the law of entrapment.

The evidence showed that on 4 March 1974 Trooper John R. Davis of the Maryland State Police gave Fisher $20 for which Fisher delivered to him aluminum foil packets containing what laboratory analyses proved was heroin. Fisher readily admitted his participation in the transaction, but contended that he was entrapped.

The events which led to Fisher's convictions were related to the jury by Davis, who was called as a witness for the State, and by Fisher himself, who testified in his own defense. According to Davis, in January of 1974 he began an undercover investigation of the narcotics traffic in the Kent Narrows area of Queen Anne's County. On 4 March 1974 at about 7:30 P.M., Davis and an informant named Terry Brazwell were seated in Davis's parked car at Asbury's Place, a tavern in Kent Narrows. Davis knew the tavern to be a place, frequented predominantly by Negroes, where narcotics transactions were conducted. From the car Davis and Brazwell saw Fisher and a companion named Scull walking in the parking lot of the tavern. Brazwell knew Fisher personally; Davis did not. Brazwell called to Fisher and Scull and asked them if there was any dope in the area. Fisher replied that there was none now but that everyone was waiting for "Smitty" to return from Baltimore City with heroin. Fisher and Scull got in the back seat of Davis's car and the foursome conversed for about half an hour, primarily about subjects other than drugs.

Trooper Davis testified that he knew "Smitty" to be one Earl Sylvester Baily. He said he asked when "Smitty" would arrive. Fisher said that they didn't know, that everybody was waiting. Davis told Fisher that he was looking for

heroin. Fisher replied that he didn't know whether "Smitty" would sell to Davis. At about 8:10 P.M. Baily's car arrived in the parking lot. Baily and a companion unknown to Davis got out. A large crowd approached Baily. Fisher, who had been watching Baily's arrival from Davis's car, said, "Let me out of the car. I'll go see what's going on." Fisher walked over to Baily. In a few minutes, Fisher returned to the car and told Davis that "Smitty" himself was not selling, that he had a runner selling for him. Davis asked Fisher, "Well, can I meet him? I want to get some smack." Davis's testimony continued:

> "Mr. Fisher then advised me I was not of the right color. The street pusher would not sell to me because I was white.
>
> "Mr. Fisher further advised me that he would purchase the heroin for me. As he was going to get some himself, he would purchase a quantity for me.
>
> * * *
>
> "At this time, I handed Mr. Fisher $20 in U.S. currency. Mr. Fisher took the $20, went over to Asbury's Place, went inside the establishment. I lost contact with Mr. Fisher.
>
> "Mr. Fisher returned a few minutes later, walked directly to me, handed me two envelopes and said, 'Here's your stuff.' And at this time, Mr. Fisher terminated contact with me and left the area of my vision."

Davis identified Fisher in court without objection.

Fisher presented a somewhat different version of the transaction. He stated that he gave the two bags not to Davis but to Brazwell, with whom he had been "close friends" for six or seven years. Fisher insisted that "the only reason why I went and got the drugs for him was because Terry was sitting in the car and I knew him." On direct examination, Fisher said:

> "Q [By defense counsel] Now, did you have an

idea — did you believe that this package was for Brazwell or were they for the Trooper?

A Well, I thought they was for the both of them, one for each one of them, I guess. I didn't know. I didn't even ask them.

Q Did you offer to go in and —

A No, I didn't. Trooper Davis asked me to go and get them for him.

Q He just asked you out of the clear blue?

A Yes, he asked me would I go get him two bags of heroin and they —

Q Well, why didn't you say, 'Go get it yourself' ?

A Well, I told him that he couldn't get it because he was white, and the onliest reason why I done it — because of Terry.

Q Didn't you feel like you were going out on a limb for somebody that you didn't even know?

A For him, yes, but not for Terry.

* * *

Q Why did you do it all of a sudden?

A Because — the onliest reason why I done it, like I said before, because I knew Terry and Terry had told me that they was in prison together — been in jail — and they had got out the same day and that he knew him in jail. This is what Terry told me, and so I trusted Terry's word."

On cross examination Fisher testified that he had never seen Trooper Davis before, but that it was Davis who asked where he could get some drugs. Fisher admitted that at the time he was himself a heroin user. He learned that drugs would be available that evening from one of his suppliers. Fisher said that he told Davis that Davis was not the right color, that he took $20 from Davis, and that he purchased two bags in aluminum foil which he gave to Brazwell, who got out of the car also. He said that when Davis "asked me to go get two bags * * * I just goes and get them and brings

them back and that's it. There was no purpose. I just did it out of friendship with Terry."

When counsel conferred with the presiding judge, James A. Wise, on instructions to be given to the jury, Fisher's counsel requested an instruction on the law of entrapment. Judge Wise declined to give such an instruction. Counsel excepted, in a manner which we consider adequate to preserve the point for appeal.

The ruling was clearly correct. The evidence was not sufficient to get Fisher over the first hurdle. There was utterly no showing of inducement.[2] There was no legally cognizable issue involving the law of entrapment. The defense cannot be raised by argument, it may be raised only by evidence. There was no evidence here to raise it.

The testimony describing the transaction contained two conflicts. Fisher said that Trooper Davis asked him to get the heroin for him, and also said that he delivered it to Brazwell, not to Davis. Davis said that Fisher volunteered to get the heroin, and that it was delivered to him, not to Brazwell. Whichever is the true version of either aspect of the transaction, the result is the same.

## Other Contentions

Appellant makes two other contentions in this appeal, neither of which has any substantial merit. Since one arose from the other we shall comment upon them together.

Trooper Davis testified that when he took the suspected heroin back to the undercover headquarters from which he and other troopers were operating at the time, he put the packets in an evidence envelope, made up the necessary identifying papers, and sealed the envelope. The weight was recorded as .6 grams. Trooper Davis testified that later he took that same envelope to the State Police Laboratory and turned it over to the chemist there, whose later analysis

---

2. "Induce" is defined in The American Heritage Dictionary of the English Language as meaning: "To lead or move by influence or persuasion; to prevail upon."

showed that the substance contained heroin. The chemist recorded the weight as .8 grams.

Appellant argues that this apparent discrepancy in the weight somehow indicates a break in the chain of custody of the material.

The evidence concerning the custody clearly excludes any reasonable probability that someone tampered with the heroin. *Breeding v. State*, 220 Md. 193, 151 A. 2d 743 (1959). We cannot see how the apparent weight discrepancy, even though not satisfactorily explained, could lead to a conclusion that the substance analyzed by the chemist was not the same substance obtained by Trooper Davis from Fisher.

When Trooper Davis was questioned about the discrepancy and asked if he could explain it, he merely commented that the scale they were using was an old one and that the scale at headquarters was modern. When counsel for Fisher attempted to question Trooper Davis further about the scale, the trial judge commented that the trooper was not an expert who could explain why the scale didn't work right and that he was not responsible for it. Fisher contends that the comments by the judge were prejudicial to him. We do not agree.

*Judgments affirmed.*