# THOMAS NICHOLAS DRAVO v. STATE OF MARYLAND

[No. 41, September Term, 1980.]

*Decided October 10, 1980.*

The cause was argued before MORTON, THOMPSON and LISS, JJ.

*Robert A. Greenberg,* with whom was *Victor A. Houlon* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, State's Attorney for Anne Arundel County,* and *William Roessler, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Thomas Nicholas Dravo, the appellant, was convicted of possession of marijuana with intent to distribute. He was tried in the Circuit Court for Anne Arundel County, before Judge Raymond G. Thieme, sitting without a jury, and was sentenced to serve five years in prison. The appellant's sole defense was that he had been entrapped by a police informer.

The appellant contends the trial court erred in failing to find entrapment as a matter of law and secondly that the so-called "objective" test for entrapment should supersede the "subjective" or "origin of interest" test currently used in Maryland.

The appellant was arrested on July 27, 1979, when he attempted to sell approximately 16 pounds of marijuana to an undercover police officer, Detective Sergeant William Fogle of the Annapolis Police Department, who was the State's sole witness at trial. He testified that approximately two weeks prior to the appellant's arrest he received an offer from one Richard Ramey to perform "some drill work", i.e., to act as an informant in connection with illegal drug transactions. Although Sergeant Fogle accepted Ramey's offer, no specific arrangements for the utilization of Ramey's services were made at that time. Fogle testified that he later confirmed that Ramey had previously acted as an informant for the Anne Arundel County Police, that he had been found to be reliable in so doing, and that convictions had been obtained as a result of his activities. At approximately 4:30 p.m. on July 27, 1979, Ramey telephoned Sergeant Fogle and informed him that he knew someone who had a substantial quantity of marijuana for sale. When Fogle indicated that the price for the marijuana was too high, Ramey said that he would call back again. A few minutes later, Ramey

telephoned again; he told Fogle that the sale had been arranged at the price Fogle was willing to pay. Less than an hour later, Sergeant Fogle, driving an unmarked police vehicle, was parked in the parking lot of an establishment known as "Charlie's West Side." Fogle testified that he had told Ramey to bring the seller to that location, where they would make the purchase. The informant, Ramey, arrived in a rented car driven by the appellant. There the appellant instructed Ramey to tell Fogle that he wouldn't make the sale at that location and that Fogle should follow them in his vehicle to another location. The appellant testified that he refused to make the sale on the parking lot of Charlie's West Side because he believed that there had recently been considerable police activity in that area. From the parking lot, Sergeant Fogle followed the appellant and Ramey some distance to another parking lot. Fogle testified that, when he had parked his vehicle next to the appellant's, the appellant asked whether he had the money; Fogle replied that he did. Fogle then asked the appellant whether he had the marijuana; the appellant also replied in the affirmative. The two men then went to the rear of the appellant's vehicle, where the appellant opened the trunk and displayed the marijuana. At that time Sergeant Fogle identified himself as a police officer and placed the appellant under arrest.

The appellant took the stand in his own defense. He testified on direct examination that he had been convicted in 1967 and again in 1973 for drug offenses; he had served time in prison for each conviction. He stated that since his release from prison following his second conviction, he had not been involved in any illegal drug trafficking. He stated that approximately two weeks prior to his arrest he encountered the informant, Ramey, at a methadone clinic where the appellant's girlfriend was receiving treatment. The appellant indicated that he had previously become acquainted with Ramey when they were incarcerated together in 1967. According to the appellant, Ramey asked the appellant, during the course of their conversation, whether "there was anybody around town that had any pot"; the appellant testified that he replied: "I told him that I hadn't been here

in seven years, I wasn't looking for any, I wasn't interested and I wasn't doing it any more. I wouldn't even know where to begin to look." The appellant stated that he encountered Ramey for a second time approximately three days before his arrest and for a third time at approximately 1 p.m. on the day of his arrest. The appellant stated that, during both of these meetings, Ramey "kept bugging" him about obtaining some marijuana. During the latter meeting, the appellant claimed that "finally I realized that he wasn't going to let me alone, and I told him that I had no idea where I could find any in town. That I'd just ask and for him to get back to me, see what would happen." By 4:30 p.m. the appellant had acquired some sixteen pounds of marijuana. He testified that he telephoned his girlfriend, told her of Ramey's request, and that she in turn contacted a man, identified only as "Chuck", who had sixteen pounds of marijuana for sale. The appellant's girlfriend then drove with Chuck, in a car which Chuck had rented, from Alexandria to Annapolis, where they met the appellant. Shortly thereafter, the informant Ramey joined them, Chuck turned over the car containing the marijuana to the appellant, and the appellant and Ramey drove to the rendezvous with Sergeant Fogle, where the appellant was arrested. The appellant claimed that it was Ramey who talked with Fogle, who opened the trunk, and who conducted the sale.

Maryland has adopted what has been termed the "origin of interest" test for evaluating claims of entrapment. This test was first adopted by this Court in *Simmons v. State,* 8 Md. App. 355, 259 A.2d 814 (1969), and subsequently approved by the Court of Appeals in *Grohman v. State,* 258 Md. 552, 267 A.2d 193 (1970), *cert. denied,* 401 U.S. 982, 91 S. Ct. 1204 (1971). "[T]he fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law enforcement officials. (Emphasis supplied)." *Simmons v. State, supra* at 361, quoting *Sherman v. United States,* 356 U.S. 369, 372, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958).

Thus, two questions of fact must be resolved in each case: "(1) did the agent [of the police] induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense." *Simmons v. State, supra* at 362. The burden as to the first question, that of inducement, is upon the accused. In order to raise the defense of entrapment, he must show by a preponderance of the evidence that he was induced by the police to commit the offense charged. *Simmons v. State, supra.* The burden as to the second question, that of predisposition, is upon the State. Once the accused has raised the defense, the State must show that the commission of the criminal act was not due to police persuasion but that it was instead the result of the defendant's own predisposition. This must be proven beyond a reasonable doubt. *Simmons v. State, supra.* It should be emphasized:

"[T]hat the defense of entrapment cannot be considered as 'having been raised' — that entrapment cannot become an issue for the trier of the facts — unless there is sufficient evidence which, if deemed weighty and credible by the trier of the facts, would support a finding that the police, directly or through their agent, induced the defendant to commit the offense charged. Unless there is evidence to show inducement, the second question — predisposition — is irrelevant." *Fisher v. State,* 28 Md. App. 243, 248-49, 345 A.2d 110 (1975).

The appellant contends that entrapment was shown at trial as a matter of law. In *Fisher v. State, supra* at 249-50, we set forth the circumstances under which entrapment could be considered to be established as a matter of law:

"A motion for judgment of acquittal based upon that defense requires the Court to decide whether there is undisputed evidence, so clear and decisive that reasonable minds, applying the correct law, could not differ in finding that the defendant was induced

by the police to commit the offense, and that his criminal conduct was due to the persuasion of the police, and not to his own readiness or predisposition to commit the offense. Only when such is the state of the evidence is there entrapment as a matter of law."

We are of the opinion that such is not the state of the evidence in the case at bar.[1] The appellant's testimony was the only evidence offered at trial to show entrapment.[2]

The case thus comes before us on facts which are similar to those which were before the United States Supreme Court when it heard *Masciale v. United States,* 356 U.S. 386, 78 S. Ct. 827, 2 L. Ed. 2d 859 (1958), a companion case to *Sherman v. United States, supra.* Although neither the appellant nor the State cited *Masciale* in their briefs or during oral argument before this Court, we find the decision of the Supreme Court to be instructive. Before the Supreme Court, Masciale argued that his narcotics conviction should be overturned on the grounds that as a matter of law the defense of entrapment had been established. There, as in the case at bar, the defendant testified at trial that a police informer had engaged in a campaign to persuade him to sell narcotics and argued that his undisputed testimony concerning the actions of the informer explained why he eventually sold narcotics to an undercover policeman and established entrapment as a matter of law. The Supreme Court rejected this argument. The Court held that, while the defendant had presented sufficient evidence to reach the jury on the issue of entrapment,[3] the jury was entitled to disbelieve the defendant's testimony and to find him guilty.

1. We note that counsel was unable to refer us to, and our own research fails to disclose, a single appellate decision in this State in which entrapment was found as a matter of law. *See,* Fisher v. State, *supra,* at 249-50, n. 1, and cases cited therein.

2. This distinguishes the instant case from that presented in Sherman v. United States, *supra,* where entrapment was found as a matter of law based on the uncontradicted testimony of the prosecution's witness.

3. Had the case at bar been tried before a jury, the appellant's testimony would have been sufficient to require that the jury be instructed as to the law of entrapment. *See,* Byrd v. State, 16 Md. App. 391, 297 A.2d 312 (1972).

The Court further held that, despite the defendant's explanation and account of his meeting with the undercover police officer, the jury could have believed the testimony given by the officer and inferred from that testimony that the defendant was predisposed to commit the crime for which he was convicted.

For similar reasons, we reject the appellant's contention that, in the case at bar, entrapment was established as a matter of law.

The credibility of the witnesses at trial is of course for the trier of fact. *Watson v. State,* 282 Md. 73, 382 A.2d 574 (1978), *cert. denied,* 437 U.S. 908, 98 S. Ct. 3100; *Rettman v. State,* 15 Md. App. 666, 292 A.2d 107 (1972), *cert. denied,* 266 Md. 741. Thus, we have held that the trier of fact is under no obligation to believe even the uncontradicted explanations or denials of an accused. *Rettman v. State, supra; Jones v. State,* 13 Md. App. 309, 283 A.2d 184 (1971).

Here, the trial court, like the jury in *Masciale,* was entitled to disbelieve the appellant's testimony concerning the solicitation by the informant Ramey. Inasmuch as that testimony was the only evidence offered which tended to show inducement, if the appellant's testimony was not believed then there was before the court no showing of inducement whatsoever and the issue of entrapment was not raised. *See, Simmons v. State, supra.*

Even if the court below chose to believe the appellant's account of the events leading up to his arrest, under the circumstances involved here we are of the opinion that the trial court could have properly concluded that the conduct of the informant Ramey did not constitute inducement or that the appellant was nonetheless predisposed to commit the offense.

We have previously refused to find entrapment absent the "repeated and persistent solicitation of a previously law abiding citizen in order to overcome his reluctance to commit a crime." *Simmons v. State, supra,* at 359, quoting from *Stewart v. State,* 232 Md. 318, 193 A.2d 40 (1963). We do not believe that the actions of the informant in this case, in asking the appellant, during the course of three chance

encounters over a two week period, if he knew where marijuana could be obtained, constitutes the kind of solicitation which would overcome the reluctance to commit a crime of a previously law-abiding citizen. We believe the trier of fact would be justified in concluding that an individual, who obtained sixteen pounds of marijuana on three hours' notice and who took steps to avoid police surveillance while conducting the transaction, was predisposed to commit the offense with which he was charged. The judgment of the trial court on the facts will not be set aside unless clearly erroneous. Rule 1086.

The appellant also contends that we should reject the "origin of interest" test for entrapment and adopt the so-called "objective" test.

The "objective" test was set forth in the concurring opinion in *Sorrells v. United States,* 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413 (1932) (opinion Roberts, J.) and *Sherman v. United States, supra,* (opinion Frankfurter, J.) and in the dissenting opinions in *United States v. Russell,* 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973) (opinions of Douglas, J. and Stewart, J.). Unlike the "origin of interest" test, the "objective" test is not concerned with the predisposition, or lack thereof, of the accused; instead, it focuses upon the actions of the government agent and requires an examination of "whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." 356 U.S. at 382, (opinion of Frankfurter, J.).

The appellant's argument is not persuasive.

First, as noted above, the Court of Appeals accepted the "origin of interest" test in *Grohman v. State, supra.* That decision remains the law today.

Second, appellant failed to present any sound reason for discarding the "origin of interest" test in favor of the "objective" test. Appellant's assertion that the "objective" test is employed by a growing number of jurisdictions notwithstanding, the "origin of interest" enjoys far wider acceptance than does the "objective" test. *See,* 62 A.L.R.3d

110, *Modern Status of the Law Concerning Entrapment to Commit Narcotics Offense — State Cases.* The "origin of interest" test has been approved by a majority of the Justices of the United States Supreme Court on at least three separate occasions. *See, Sorrells v. United States, supra, Sherman v. United States, supra,* and *Russell v. United States, supra.* While these decisions are of course not binding upon this Court, inasmuch as the entrapment defense is not constitutional in nature, *see, Russell v. United States, supra,* this is authority which we found persuasive when we first adopted the "origin of interest" test in *Simmons v. State, supra,* and we find it persuasive today.

Third, the evidence presented below fails to establish entrapment as a matter of law, regardless of whether the "origin of interest" or the "objective" test is applied. As we noted above, it is clear that the trial court did not believe the testimony of the appellant concerning the efforts of the informer Ramey to persuade him to enter into a drug transaction. Unless that testimony was believed, there was before the trial court no evidence whatsoever to show misconduct by any agent of the State. Even if the testimony were to be believed, we doubt whether Ramey's conduct could be considered so outrageous and so offensive as to bar prosecution of the appellant. Thus, entrapment even under the "objective" test was not established as a matter of law.

*Judgment affirmed.*
*Appellant to pay the costs.*