483 A.2d 1324

**David Bruce REIMSNIDER**

v.

**STATE of Maryland**

**No. 139, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 20, 1984.

---

John A. Austin, Towson, with whom were Charles E. Rosolio and Needle, Ehudin & Rosolio, Towson, on brief, for Appellant.

Carmina Szunyog Hughes, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., William R. Hymes, State's Atty. for Howard County, and Michael D. Rexroad, Asst. State's Atty. for Howard County, on brief, for appellee.

Argued before BLOOM and GETTY, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MORTON, Judge.

This is an appeal by David Bruce Reimsnider, the defendant—appellant, from a judgment entered against him in the Circuit Court for Howard County (Fischer, J.). The appellant contends:

1. That the trial court erred in denying the motion to suppress the evidence as it was seized incident to an unlawful arrest and search;

2. That the trial court erred in not dismissing the indictment for the State's failure to bring the appellant to trial within 180 days;

3. That the trial court erred in not granting a mistrial based on comments by the State prosecutor during closing arguments;

4. That the jury received improper instructions concerning the defense of entrapment and,

5. That the trial court erred in not granting motions for judgment of acquittal on the grounds of entrapment.

## Statement of facts

On March 27, 1983, at approximately 2:45 p.m., the appellant, David Bruce Reimsnider, was arrested at the Hilton Inn in Columbia, Maryland. The appellant was immediately searched and subsequently charged with possession of cocaine, possession of cocaine with intent to distribute and the unlawful carrying of a handgun. Discovered as a result of the warrantless search of the appellant and his briefcase was $931 in currency and four pounds of cocaine.

Testimony of Sergeant Rineker, of the Maryland State Police, revealed that the appellant had been the subject of a "sting" operation. On March 7, 1983, the State police had arrested Mr. Nicholas Dezes for various drug related offenses. In exchange for lenient treatment, Mr. Dezes disclosed his sources of drug buyers and sellers, one being the appellant. Mr. Dezes agreed to cooperate with the police by wearing a body wire and surveillance device during his meetings with the appellant to arrange a drug transaction. From March 9, 1983 to March 27, 1983 Mr. Dezes and the appellant met several times under the surveillance of the Maryland State Police.

Ultimately, Mr. Dezes and the appellant agreed to meet at the Columbia Hilton on March 27. Mr. Dezes was to give the appellant eight pounds of cocaine at $24,000 per pound. Sergeant Rineker arranged the transaction to take place in room 424, with himself in the adjoining room 423. A "bug" was placed under the coffee table in room 424.

Several other State officers, including Trooper College, were staked out in the parking lot. After the appellant entered the hotel, they moved to the hallway outside room 424. The plan was that Trooper College and some other officers would arrest the appellant as he exited the hotel room. Sergeant Rineker was to remain in room 423 and signal Trooper College only if the exchange failed to take place. Another officer, Lieutenant Davis, was in room 423 to hear the transactions before he joined the other officers in the arrest.

The arrest ensued according to the plan. As the appellant exited the hotel room, he was arrested and searched by Trooper College, Lieutenant Davis, and other officers. Trooper College, on the inspection of the appellant's briefcase, discovered the cash and cocaine.

It is to these events that the appellant most strenuously objects. He contends that he did not give Trooper College permission to open and search the briefcase. Moreover, the appellant emphasizes that, according to the testimony of Trooper College, the arresting officers received no information or communication from Sergeant Rineker prior to making the arrest. Additionally, Sergeant Rineker, who had monitored the conversation between Mr. Dezes and the appellant, did not participate in the arrest. Consequently, according to the appellant, the actual arresting officers did not have the requisite knowledge or probable cause which would justify the warrantless arrest and search.

The appellant first appeared before the court on April 27, 1983. The trial was scheduled for September 14, 1983. On September 13, 1983, the appellant requested and was granted a postponement because the State allegedly failed to comply timely with discovery requests. The trial was rescheduled for the first available date on the docket, being November 28, 1983. The appellant alleges that this date was beyond 180 days from his initial appearance and that the indictment should have been dismissed.

A jury trial was held on November 28 and 29. During the trial, the appellant moved to suppress the evidence seized at the time of the arrest, moved for a mistrial based on comments by the prosecutor during closing arguments and moved for acquittal based on the defense of entrapment. All of these motions were denied.

I. Denial of the motion to suppress the evidence

The appellant contends that because no consent was given by him to search the briefcase and because there was no warrant and because no probable cause existed in the minds of the arresting officers, the arrest was unlawful.

While we agree as to the first two contentions, we do not agree that the appellant was arrested and his briefcase searched without probable cause.

### A. *The arrest*

■■■ The general rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested has committed it, *Duckett v. State*, 3 Md.App. 563, 572, 240 A.2d 332 (1968); *Robinson v. State*, 4 Md.App. 515, 522, 243 A.2d 879 (1968). While the appellant argues that Trooper College had no personal knowledge or probable cause that the crime had been committed, "we do not think that it is a necessary conclusion ... that the arresting officer must himself have probable cause for the arrest, where another member of the police team has probable cause and the arresting officer has been alerted to make the arrest," *Robinson*, id. at 524, 243 A.2d 879. We have previously concluded that probable cause is to be measured in terms of the collective information within the possession of the entire police team, *Peterson, Deal & Hunt v. State*, 15 Md.App. 478, 488, 292 A.2d 714 (1972).

■■■ The difficulty in the instant case is that there was no verbal communication between Sergeant Rineker and Trooper College. As pointed out in *Robinson, supra,* 4 Md.App. at 524, 243 A.2d 879 and in *Sands v. State*, 9 Md.App. 71, 76, 262 A.2d 583 (1970), it is not essential for the arresting officer to have probable cause so long as other members of the team have cause and have alerted the others. "The arresting officer *must have been alerted* to make the arrest." *Sands*, id. at 76, 262 A.2d 583 (emphasis added). Thus, the issue becomes whether silence constitutes a form of communication between the officers. We believe it does.

Trooper College and Sergeant Rineker acted according to a prearranged plan. Trooper College was aware of the arrangement between Sergeant Rineker and Mr. Dezes.

He knew that an exchange of drugs for money was to take place in room 424. Moreover, the arresting officers were to be alerted if the transaction did not take place. Upon the silence of Sergeant Rineker, Trooper College knew the sale had transpired and that the crime had been committed.

Additionally, Lieutenant Davis had been in room 423 and had overheard the transaction in room 424. He personally participated in the arrest. Thus, although he did not verbally alert the others, by his actions of joining in the arrest, he communicated to the arresting officers that the transaction had transpired.

We are not ruling for the first time that silence can be a form of communication. Under the rules of evidence, when a statement is made in the presence of the defendant which contains assertions of fact which, if true, a defendant naturally would be expected to deny, his failure to speak is circumstantial evidence that he believes the statement to be true; his conduct is thus receivable against him as an admission. *Williams v. State*, 4 Md.App. 342, 348, 242 A.2d 813 (1968). Commensurately, in contract law, silence may operate as an acceptance of an offer, *Porter v. General Boiler Casing Co., Inc.*, 284 Md. 402, 412, 396 A.2d 1090 (1979). Specifically, in those cases where an offer has indicated a medium through which acceptance may be made, such procedure constitutes acceptance, *Schenley Industries, Inc. v. Curtis*, 38 Del. Ch. 370, 152 A.2d 300 (1959).

By analogy, the same rules apply to the instant case. The police team in this case had prearranged a plan whereby "silence" acted as an alert to arrest. Consequently, we have no difficulty in concluding that Trooper College and the other team members had the requisite probable cause to arrest and that the arrest was thereby lawful. *See Bauckman v. State*, 9 Md.App. 612, 267 A.2d 309 (1970).

B. *The Search*

■ Because we find that the arrest was valid, we conclude that the search was valid as well. The constitutional

validity of the search and seizure manifestly depends upon the constitutional validity of the appellant's arrest, *Mullaney v. State*, 5 Md.App. 248, 253, 246 A.2d 291 (1968). We have consistently ruled that when the arrest of the appellant is valid, the search of his person incident to the arrest is reasonable and the evidence seized by such search is admissible. *Robinson, supra* 4 Md.App. at 529, 243 A.2d 879; *Speaks v. State*, 3 Md.App. 371, 376, 239 A.2d 600 (1968); *Watts v. State*, 3 Md.App. 454, 460, 240 A.2d 317 (1968).

■ The U.S. Supreme Court has recently ruled that such a search is not limited to "the person" and that "examining all the items removed from the arrestee's person or possession ... is an entirely reasonable administrative procedure." *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983); *see* also *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Accordingly, the search of the appellant and his briefcase was reasonable and lawful.

## II.   Compliance with the 180 day rule

The Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 591 and Maryland Rule 4–271 require that a Circuit Court criminal case be tried within 180 days of arraignment, unless a postponement is granted by an administrative judge for good cause. In the instant case, the appellant should have been tried by October 27, 180 days after his arraignment. A postponement was granted by the hearing judge on September 13 and the new trial scheduled for November 28, the first available trial date.

The instant case is rather unusual in that the appellant requested the postponement but now contends that it was not granted for good cause. We have recently concluded that when the defendant seeks or expressly consents to a trial date in violation of this rule, he waives his rights to sanctions. *State v. Farinholt*, 54 Md.App. 124, 131, 458 A.2d 442 (1983); *Miller v. State*, 53 Md.App. 1, 6, 452 A.2d

180 (1982). Now the appellant points to the fact that he was forced to postpone as the State had failed to furnish requested discovery materials in advance of the trial date. The appellant claims that because the State's misconduct was a basis for the postponement, there was an absence of good cause.

We disagree. Unless there is a clear abuse of discretion, the findings of the hearing judge on the question of good cause for a postponement should not be overturned. *State v. Frazier,* 298 Md. 422, 450–452, 470 A.2d 1269 (1984). The appellant has not met his burden of demonstrating that the hearing judge abused his discretion. *Frazier,* id. at 452, 470 A.2d 1269.

The appellant further maintains that even if the postponement was for good cause, the administrative judge should have rescheduled the trial within the 180 day period. The appellant rests his argument on *Carter v. State,* 54 Md.App. 220, 458 A.2d 480 (1983), where we concluded that the unavailability of judicial resources does not constitute good cause under Md. Rule 4–271. The Court of Appeals recently reversed *Carter,* so as to reconcile it with *Frazier, supra,* by ruling that:

> "When the administrative judge or his designee postpones a case beyond the 180-day deadline because of court unavailability, there is a violation of [Rule 4–271] only if it is demonstrated that the change of a trial date, or the period of time until a new trial date, represented a clear abuse of discretion."

*Frazier, supra,* 298 Md. at 461–462, 470 A.2d 1269. Specifically, the Court of Appeals upheld three postponements to dates beyond the 180-day period. *State v. Beard, Carter & Turner,* 299 Md. 472, 474 A.2d 514 (1984). We find that the appellant failed to meet the burden of demonstrating that the postponements represented clear abuses of discretion.

### III.   Denial of Motion for Mistrial

During his closing argument, the State Prosecutor stated, with reference to the appellant:

"And who was he buying this cocaine for? Well, as we find out from the contents of the conversation, David Brüce Reimsnider was buying some for himself and some for the other people who he *apparently will not disclose,* who are supplying the money ..." (emphasis added)

The appellant contends that this statement underscored in the minds of the jurors the fact that the appellant refused to testify. We find no merit to this claim.

In fact, the State was referring to evidence that had been introduced without objection. This evidence was that the appellant refused to cooperate with the police or to disclose the names of his contacts. The statement accurately reflected unobjected to evidence and was simply a reminder to the jurors of the previously introduced evidence. As previously determined:

"It is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence."

*Wilhelm v. State,* 272 Md. 404, 412, 326 A.2d 707 (1974). We reject the argument that the prosecutor in any way accentuated the fact that the appellant declined to testify.

## IV. Entrapment instructions

The appellant contends that the trial court's instructions to the jury concerning the defense of entrapment were deficient. At trial, counsel for the appellant noted a timely objection to the judge's allocation of the burden of proof on the appellant. The trial judge elucidated the instructions, and stated:

"The only burden upon the defendant is to raise the issue [of entrapment] ... once the issue has been raised in your mind, the issue has been presented, then the state has the burden of proving to your satisfaction beyond a reasonable doubt that the defendant was not in fact entrapped."

The appellant now takes exception to the amended instructions. Counsel for the appellant however, neglected to object to the subsequent instruction. Accordingly, he has

failed to preserve the issue for review on appeal. Maryland Rule 4–325(e).

██ Further, we decline to conclude that the instructions constituted plain error meriting our review. The trial judge explicitly and properly allocated the burden of proof on the State to show that the appellant was not entrapped. *See Dravo v. State,* 46 Md.App. 622, 626, 420 A.2d 1012 (1980). No unconstitutional burden was placed on the appellant, nor was a burden on the State alleviated.

## V.  Motion for acquittal

██ The appellant's final contention is that the trial court erred in refusing to grant the motion for acquittal because the appellant was entrapped as a matter of law. This State adheres to the "origin of interest" test to determine whether an individual has been entrapped as a matter of law. According to the "origin of interest" test:

> "A motion for judgment of acquittal based upon that defense requires the court to decide whether there is undisputed evidence so clear and decisive that reasonable minds, applying the correct law, could not differ in finding that the defendant was induced by the police to commit the offense, and that his criminal conduct was due to the persuasion of the police, and not to his own readiness or predisposition to commit the offense."

*Fisher v. State,* 28 Md.App. 243, 249–250, 345 A.2d 110 (1975); *see* also *Simmons v. State,* 8 Md.App. 355, 362, 259 A.2d 814 (1969).

██ In the instant case, the appellant had been involved in drug transactions with Mr. Dezes prior to March 7, 1983. Mr. Dezes testified that he had known the appellant through their drug exchanges for over four years. Mr. Dezes stated that the appellant owed him approximately $39,000 for prior sales of cocaine. Indeed, Mr. Dezes testified that over a period of twelve or thirteen months, he had sold approximately 90 pounds, valued at $24,000 per pound, to the appellant. Finally, the police had seized ledger

sheets maintained by Mr. Dezes which contained the names of those with whom Mr. Dezes dealt drugs, including the appellant. Clearly, the two had a lengthy and continuous business relationship concerning the sale of cocaine. In view of this evidence, the triers of fact could reasonably have concluded that the appellant was predisposed to committing the offense.

The appellant insists that we adopt the "objective" test, utilized by other jurisdictions, to determine whether he was entrapped. The objective test focuses not on the accused's state of mind but on the government agent's abuse of governmental power. In the past, we have flatly rejected the application of this test, *Dravo, supra,* 46 Md.App. at 629, 420 A.2d 1012, and we decline to apply it in the instant case.

It follows that the judgment is affirmed.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.